[Crim. No. 8333. Second Dist., Div. One. Dec. 21, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. GAYLE VINCENT ULSH et al., Defendants and Respondents.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Brinton N. Bowles, under appointment by the District Court of Appeal, Ellery E. Cuff, Public Defender, and Alvin Calof, Deputy Public Defender, for Defendants and Respondents.

FOURT, J.—This is an appeal by the People from an order granting a dismissal under the provisions of section 995, Penal Code.

In an information filed in the Superior Court in Los Angeles County on October 11, 1961, the defendants above named* were charged in Count I with murdering Richard Earl McKain on or about September 15, 1961. Ulsh was also

*Reporter's note: The second defendant is Warren Leonard Evernden.

charged with two prior felony convictions (burglary and receiving stolen property). On October 13, 1961, the defendants were arraigned. On October 20, 1961, the defendants pleaded not guilty and trial was set for January 15, 1962. The public defender made a motion to be relieved as attorney for Ulsh. On January 15, 1962, the court apparently found that there was a conflict of interest between the defendants and appointed present counsel for Ulsh. Ulsh denied the two prior convictions and the cause was from time to time continued for trial. On February 2, 1962, Evernden's motion for severance of trial was granted. Ulsh admitted the burglary prior conviction.

Evernden stipulated on February 2, 1962, that a jury be waived and the cause submitted upon the testimony contained in the transcript of the proceedings had at the preliminary hearing. The matter as to Evernden was continued to February 15, 1962.

On February 5, 1962, the trial of Ulsh commenced. A jury was selected and the cause was continued to February 8, 1962.

On February 6, 1962, the minutes recite both defendants and their respective counsel were present in court. By stipulation of each party the cause was advanced to that date for further disposition. It was stipulated that a mistrial might be declared as to each defendant and such was declared by the court. Permission was given to each defendant to withdraw his plea of not guilty and each defendant waived his right to assert the defense of former jeopardy and thereupon each defendant moved the court to dismiss the action under section 995, Penal Code. The motion to dismiss was granted upon the grounds that there was no probable cause to hold the defendants to trial. A notice of appeal was filed by the prosecution within due time.

The facts are that the defendants at about 7:45 p.m. September 15, 1961, went to the liquor store located at 842 North Prairie Avenue, Hawthorne, California, for the express purpose of committing a robbery. One of the defendants covered the patrons in the store with a gun and the other defendant with a gun took the money from a clerk. One of the patrons was compelled to give up his wallet to one of the armed defendants. An employee of the store sounded a secret alarm which actuated a signal at the police station and gave an indication to the police department that a robbery was then and there taking place at the above mentioned establishment. A policeman at the station received the alarm and imme-

diately dispatched four police units (two automobiles and two motorcycles) to the scene. The policeman who dispatched the vehicles requested that the officers in such vehicles acknowledge his calls and Officer Sundquist (who was driving one of the dispatched automobiles) replied in approximately two minutes that he was in pursuit.

Officer Sundquist and Officer Whittaker were in a patrol car on the occasion and immediately proceeded northbound on Prairie Avenue between 134th and 133rd Streets, where they saw a southbound vehicle going at an excessive rate of speed and making sharp movements. The passenger in that car appeared to lurch or to duck down in the seat. Officer Sundquist turned around and pursued the white convertible Pontiac automobile which they had noted. The red lights on the police car were turned on. The chase continued on Prairie Avenue to 139th Street where the defendants turned the Pontiac car to the right. The officers followed and found the Pontiac car parked in the middle of the street approximately 40 yards from the intersection. The officers were met with gunfire from the Pontiac car. About 15 shots were fired when the defendants drove away. The officers followed with red lights showing and their siren sounding. The defendants turned left (southbound) on Jefferson Avenue without making a legally required boulevard stop. Both cars were southbound on Jefferson Avenue approximately a block apart when the officers were confronted with more gunfire from the defendants in the Pontiac automobile. The defendants turned west onto Rosecrans Avenue and Officer Sundquist fired a shot at the defendants and Officer Whittaker fired twice at the defendants. At Rosecrans Avenue (144th) and Larch Street the defendants turned south and the police followed about a block behind. Between Rosecrans Avenue and 145th Street more shots were fired from both cars. One shot from the defendants' car hit the police car windshield and the bullet or flying glass hit Sundquist in the eye. After stopping the police car at 145th Street Sundquist fired five shots at the defendants and the defendants fired three shots in return at the police.

The defendants' car proceeded very rapidly down Larch Street as it approached the intersection of Larch Street and 147th Street. Richard Earl McKain was a passenger in an automobile travelling in an easterly direction on 147th Street in the intersection of said street with Larch Street when

the Pontiac car driven by the defendants crashed into the automobile in which McKain was riding: McKain suffered injuries from which he died shortly thereafter. The crash of the two automobiles in the intersection was very soon after the last-mentioned shooting.

Following the collision Ulsh apparently got out of the Pontiac and ran south on Larch Street. There was a gun upon the floor of the Pontiac car when the police arrived. Ulsh was seen running across a parking lot and climbing a concrete wall. He was found shortly thereafter hiding under a trailer nearby. Evernden was in the Pontiac automobile after the collision. The Pontiac car was searched and a Luger automatic pistol with clip, money in the sum of $111.20, some empty shells, and a 357 Magnum revolver and several rounds of live ammunition were found. The plastic rear window of the Pontiac convertible was pierced with many holes from bullets which were fired from within the automobile.

The defendants were questioned and an officer testified that the defendants had stated that they planned to rob the liquor store, that they had parked their white Pontiac convertible automobile on 115th Street east of Prairie Avenue, that Evernden went into the store first and herded the people therein to the back of the store with a loaded Luger gun. Ulsh came in shortly afterward and stopped a man in the store and told him to put the money in a brown bag. After the money was so placed Ulsh yelled to Evernden to leave the place. They ran to their automobile and Ulsh drove with Evernden as a passenger in the Pontiac car. At about 136th Street Ulsh looked in the rear view mirror and saw the police car with its red lights on. Ulsh speeded up the Pontiac car and tried to evade arrest. At about 139th Street Ulsh started shooting at the police car. Ulsh was asked if he realized that he could kill somebody by shooting in such a fashion and he answered that he did so realize that he could kill someone but that he had to get away. Evernden stated that he shot at the police car, "but at the radiator," apparently attempting to indicate that he did not shoot to kill anybody but to the contrary just to damage the radiator.

The officers further testified that the defendants had stated to them that when the police car came to a stop Ulsh handed his gun to his codefendant and told him to reload it; Evernden stated to Ulsh that he had better reload his gun too; at about this time something came through the rear window of the Pontiac and apparently a bullet from a police gun hit

the dashboard of the Pontiac and Ulsh said to Evernden "Duck they are shooting"—that he, Ulsh, then threw his arms up over the steering wheel and ducked down and the next thing he remembered they were in an accident.

The defendants identified the respective guns which they had used in the robbery and in the shooting at the police. No denials were made by either of the defendants to the statements made by the other.

The distance from the liquor store to the point of impact where the collision occurred, taking the route the defendants said they took, was 3.2 miles. The total elapsed time from the holdup in the liquor store to the collision was approximately eight minutes. The motion to dismiss the case was granted by the judge as to each defendant.

The trial judge indicated that he ruled as he did because he doubted that the "killing occurred during the course of a so-called hot pursuit"—that the officers "were in pursuit in fact, but without knowledge that these defendants were the robbers." Further that the death "appears to be accidental and could not have occurred as part of the plan of defendants as co-conspirators." The court also expressed doubt as to when "does perpetration cease so that the act is complete."

The sole question involved in this matter is whether the magistrate was correct in determining that there was probable cause to believe a death under the circumstances is murder by reason of its occurring in the perpetration of a robbery.

Section 189 of the Penal Code reads as follows: "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree."

Evernden argues in effect that the homicide should be determined to be a separate offense not committed in the perpetration of a robbery. With commendable frankness his counsel admits in effect that in part the defense here submitted has heretofore been presented by his counsel to an appellate court and rejected. (*People* v. *Harrison,* 176 Cal. App.2d 330 [1 Cal.Rptr. 414].) He further argues that by virtue of section 654 of the Penal Code, which prevents double punishment for a single act where such act violates two or

more separate sections of the Penal Code that he should not be prosecuted for murder and cites in support thereof *In re Chapman*, 43 Cal.2d 385 [273 P.2d 817] as authority for his position. A reading of that case demonstrates however that it in nowise aids appellants or either of them.

The argument is further made that when the robbers left the liquor store the robbery in and of itself was completed. That later on the police took up the chase and apparently it is argued in effect that the chase had nothing to do with the episode which occurred in the liquor store. Evernden then asserts in effect that California law is too strict on robbers under the felony murder rule and that the rule ought to be relaxed and that there ought to be various requirements and restrictions placed upon the rule. The complete answer to any such contention is that such argument ought to be presented to the Legislature and not to this court.

Evernden also indicates that the time lapse of approximately eight minutes from the occurrence in the liquor store to the time of the collision was too long to make applicable the felony murder rule. Furthermore, he asserts that he should not be held liable for murder because he did not in fact plan on killing anybody with the automobile.

Ulsh contends that the killing was not committed in the perpetration of a robbery. He states ''that the asportation was essentially completed insofar as the robbery is concerned.'' There is, so far as the record discloses, no such agreement upon the part of the appellant that the asportation was completed—in fact, there is substantial and uncontradicted testimony in the record to indicate that the asportation was not in any respect completed. Ulsh further asserts in effect that the driving of the getaway car was not a part of the execution of the common design and therefore the killing should not be murder under the felony murder rule. The facts, as heretofore outlined, speak for themselves in this connection.

He also contends that the time lapse from the entrance into the liquor store to the time of the collision is such that the collision could not be any part of the robbery—that the pursuit in this case was not hot—that the driving of the car was not to prevent detection or capture and that therefore the killing was not within the felony murder rule and lastly, he argues that the killing in any event was unintentional.

In a recent case (*People* v. *Kendrick*, 56 Cal.2d 71, 89-90

[14 Cal.Rptr. 13, 363 P.2d 13]) the Supreme Court of this state held in effect that a killing 48 minutes after the actual taking of the property was within the felony murder rule. The court said, among other things, the following:

"[17] (1) The court instructed that 'murder which is committed in the perpetration . . . [of] robbery . . . is murder of the first degree. . . .' Defendant argues that this was improper because the 'homicide was too distant in time and space' to classify it has having 'occurred during the perpetration of a robbery.' Here it appears that the homicide occurred some 48 minutes after the manager of the market was first accosted by defendant as he started to leave the premises. However this period of time must be considered in relation to the evidence that upon getting into his car after the robbery, defendant placed his .32 automatic gun on the seat beside him, then sped away at 70 to 75 miles per hour, and when stopped by Officer Duvall, defendant put a shell into his gun and believing that the officer was intending to arrest him for the robbery, defendant shot Duvall. Accordingly, the homicide could properly be viewed as committed by defendant in an endeavor to effect an escape.

"[18] 'Robbery, unlike burglary is not confined to a fixed *locus*, but is frequently spread over considerable distance and varying periods of time. The escape . . . with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend [him] at the time of or immediately upon gaining possession of said property, [the] plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime.' (*People* v. *Boss,* 210 Cal. 245, 251 [290 P. 881]; see also *People* v. *Kristy,* 4 Cal.2d 504, 507-508 [50 P.2d 798]; *People* v. *Dowell,* 204 Cal. 109, 117-118 [266 P. 807]; cf. *People* v. *Beghtel,* 164 Cal.App.2d 294, 296-297 [330 P.2d 444].) *The homicide, committed as it was while defendant was in hot flight with the stolen property and in the belief that the officer was about to arrest him for the robbery, falls well within this rule.*" (Emphasis added.)

In *People* v. *Cabaltero,* 31 Cal.App.2d 52, 56 [87 P.2d 364] the court considered a murder charge based on section 189 of the Penal Code. The court stated:

". . . it is well settled that one who kills another under such circumstances is guilty of murder of the first degree by force of the statute, altogether regardless of any question of intent. The killing may be wilful, deliberate and premeditated, or *it may be absolutely accidental; in either case the slayer is equally guilty since the statute applies to all homicide so committed, not merely to such as might be planned as a part of the execution of the felony intended*; and it is proper to so instruct the jury. (*People* v. *Milton,* 145 Cal. 169 [78 P. 549] ; *People* v. *Boss,* 210 Cal. 245 [290 P. 881] ; *People* v. *Reid,* 193 Cal. 491 [225 P. 859] ; *People* v. *Green,* 217 Cal. 176 [17 P.2d 730] ; 13 Cal.Jur. p. 600.) ▮▮ [2] Furthermore, it is well established that if a homicide is committed by one of several confederates while engaged in perpetrating the crime of robbery in furtherance of a common purpose, the person or persons engaged with him in the perpetration of the robbery but who did not actually do the killing, are as accountable to the law as though their own hands had intentionally fired the fatal shot or given the fatal blow, and such killing is murder of the first degree. *The jury has no option but to return a verdict of murder of the first degree whether the killing was intentionally or accidentally done, and it is proper so to instruct the jury.* (*People* v. *Perry,* 195 Cal. 623, 638 [234 P. 890] ; *People* v. *Boss, supra*; *People* v. *Raber,* 168 Cal. 316 [143 P. 317] ; *People* v. *Lawrence,* 143 Cal. 148 [76 P. 893, 68 L.R.A. 193] ; *People* v. *Olsen,* 80 Cal. 122 [22 P. 125] ; *People* v. *Denman,* 179 Cal. 497 [177 P. 461].) [Emphasis added.]

"In the present case the jury was instructed in conformity with the foregoing doctrines, and there is no claim made that any of the instructions given in that behalf incorrectly set forth any of the principles of law upon which those doctrines are founded.

" . . . . . . . . . . . .

"It has long since been declared to be the law of the state, however, that *any killing* by one [italics shown] engaged in the commission of any of the felonies enumerated in said section 189 falls within the scope of that section, and constitutes murder of the first degree. As stated in California Jurisprudence (vol. 13, p. 601), 'The moment one engages in the commission of one of the specified felonies, the law fastens upon him the intent which makes *any killing* [italics shown] in the perpetration of such offense . . . murder of the first degree.' All of the cases, and there are many

of them, declare to the same effect; and while none of them involved the killing of one conspirator by another, the unqualified language employed in the decisions therein in dealing with the question of the scope of said section 189, *makes it clear that said section was designed to include and that its provisions apply to any killing by one engaged in the commission of any of the specified felonies, irrespective of the status of the person killed and regardless of whether the killing is accidental or intentional.* [Emphasis added.] Thus in *People* v. *Bostic,* 167 Cal. 754 [141 P. 380], the court said: 'The moment he (the defendant) entered that car with a deadly weapon in his hand, with the purpose of committing robbery, the law fixed upon him the intent which would make *any killing* [italics shown] in the perperation of the robbery or in the attempt to perpetrate it, a murder of the first degree. In such cases *the law does not measure the delicate scruples of the robber* with reference to shooting his victim. [Emphasis added.] The law holds him highly guilty if he does kill and it makes no difference whether he strikes down a man . . . presumably upon the theory that "dead men tell no tales," or slays the brave man who resists . . . . In either case, he is a murderer subject to the finding of the jury upon trial or of the court after a plea of "guilty," that he shall suffer death or imprisonment for life.' So, also, in *People* v. *Milton, supra,* the court in speaking of the clause of said section 189 here involved, went on to say: 'In this the law has said to the malefactor: *If in your perpetration of or attempt to perpetrate* arson, rape, *robbery,* burglary, or mayhem *you shall take the life of a fellow-being, intentionally or unintentionally, your crime is murder of the first degree.* [Emphasis added.] The killing may be wilful, deliberate, and premeditated, or it may be absolutely accidental. In either case, you are equally guilty. The elements of wilfulness, deliberation, and premeditation are not indispensable to your crime. The murder, under section 187 of the Penal Code, is established, in that the killing is unlawful, it having been perpetrated in the performance or attempt to perform one of these felonies, and the malice of the abandoned and malignant heart is shown from the very nature of the crime you are attempting to commit.' The court then proceeded to review the history of said section 189 and in doing so quoted approvingly from a case from the state of New York (*Buel* v. *People,* 78 N.Y. 492 [34 Am.Rep. 555]), from which our code section was drawn, wherein it was said: 'The statute was

aimed against *any killing* [italics shown] by a criminal while committing any of the felonies enumerated. . . .' The same view is expressed in slightly different language in *People* v. *Denman, supra,* the court there saying: 'We regard it as settled law in this jurisdiction that one who kills another in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is guilty of murder of the first degree by force of the provision of section 189 of the Penal Code, altogether regardless of any question whether the killing was intentional or unintentional.' And in the case of *People* v. *Reid, supra,* the court summarized the law upon the subject by saying that whenever one in doing an act with the design of committing one of said felonies 'takes the life of another, this is murder. The law in such a case superadds the intent to kill to the original intent to commit the felony.' From the foregoing it will be seen that there is no intimation of an exception being made in the case of one coconspirator killing another. It is quite evident, therefore, that in order to remove such a case from the operation of said section 189, a modifying clause to that effect would have to be read into said section; and of course it is not within the judicial powers of the court so to do.

" . . . . . . . . . . . .

"As declared in *People* v. *Boss, supra*: 'The law is also well settled that where two or more persons enter into a conspiracy to commit a robbery or burglary and one of the conspirators commits a murder in the perpetration of the crime, all of said conspirators are equally guilty with said coconspirator of murder of the first degree, and it is no defense that those who did not actually participate in the killing did not intend that life should be taken in the perpetration of the robbery, or had forbidden their associate to kill, or regretted that it had been done.' Some of the earlier cases cited by the court in support of the foregoing legal principle are *People* v. *Raber, supra, People* v. *Milton, supra, People* v. *Lawrence, supra, People* v. *Perry, supra, People* v. *Witt,* 170 Cal. 104 [148 P. 928], and *People* v. *Denman, supra,* the language used by the court in the last case being: 'Nor is it of the slightest consequence that the conspirators may not have intended to bring about their victim's death. The killing, having occurred in the perpetration of robbery, was murder in the first degree.' [5] *Here the killing was done while the conspirators were attempting to flee from the scene of the robbery with the fruits thereof in their possession. There-*

*fore the homicide was committed in the perpetration of the robbery. (People v. Boss, supra; People v. Dowell, 204 Cal. 109 [266 P. 807].) As said in the former case, the escape of the robbers with the loot by means of arms necessarily is as important to the execution of the rebbery as gaining possession of the property.''* (Emphasis added.)

In *People v. Boss,* 210 Cal. 245 [290 P. 881], the appellant made the contention ''that the homicide was committed *after* the robbery had been completed'' and therefore section 187 of the Penal Code furnished the standard by which the degree of murder should be measured. The court said:

''[4] It is a sound principle of law which inheres in common reason that where two or more persons engage in a conspiracy to commit robbery and an officer or citizen is murdered while in immediate pursuit of one of their number who is fleeing from the scene of the crime with the fruits thereof in his possession, or in the possession of a co-conspirator, *the crime is not complete in the purview of the law, inasmuch as said conspirators have not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession.* In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape. *Robbery, unlike burglary is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property.* Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime. [Emphasis added.]

''We may say here, as former Chief Justice Beatty said in *People v. Woods,* 147 Cal. 265 [81 P. 652, 109 Am.St.Rep. 151], in a case very similar in material features to the one at bar wherein the death penalty was imposed, that the appellants would put their pistols to the use to which they were provided if occasion seemed to require their use. That fortui-

tous circumstances may have cast the wicked act upon one rather than the other is of no consequence so far as the guilt of both is concerned. *Of the several cases of this state which hold that the flight of a robber who killed an officer several blocks from the scene of the robbery is res gestae, it is only necessary to cite People* v. *Woods, supra,* and *People* v. *Dowell,* 204 Cal. 109 [266 P. 807, 811]. In the latter case objection to the inappropriateness of an instruction similar in all respects to the one here complained of was made and we disposed of the objection in the following words: [Emphasis added.]

" 'The objection is that the instruction was inappropriate and prejudicial because, it is said, at the time the police officer was shot and killed the robbery had been fully consummated and for that reason the murder was not committed in an attempt to perpetrate said crime. As above noted, appellant was fleeing from the scene of the robbery, carrying what he thought was the bag and money of the victim when, being pursued by the officer of the law, appellant fired upon him in order to effect his escape while retaining the object of the crime. We are satisfied that the crime of robbery had not been completed in any sense at the time of the unlawful shooting, but on the contrary the murder was committed in the perpetration of such crime.' (*People* v. *Dowell,* 204 Cal. 109, 118 [266 P. 807], see, also, *People* v. *Pool,* 27 Cal. [572] 573.)

"Our reports contain many other cases bearing more or less directly upon the point which fully support the principle of law announced in said cited cases. Cases in other jurisdictions directly in point are: *Bissot* v. *State,* 53 Ind. 408; *Conrad* v. *State,* 75 Ohio St. 52 [78 N.E. 957, 8 Ann.Cas. 966, 6 L.R.A. N.S. 1154]; *Clark* v. *State,* 169 Ark. 717 [276 S.W. 849]; *State* v. *Brown,* 7 Ore. 186."

The assertion that the prosecution did not establish the causal relationship between the robbery at the liquor store, the attempted getaway and the killing of McKain is without merit. ▮ The court said in *People* v. *Mason,* 54 Cal.2d 164 [4 Cal.Rptr. 841, 351 P.2d 1025] quoting from other cases:

"In *People* v. *Chavez,* 37 Cal.2d 656, 669-670 [234 P.2d 632], we stated: 'The law of this state has never required proof of a strict causal relationship between the felony and the homicide. ▮ *The statute was adopted for the protection of the community and its residents, not for the bene-*

*fit of the lawbreaker, and this court has viewed it as obviating the necessity for, rather than requiring, any technical inquiry concerning whether there has been a completion, abandonment, or desistence of the felony before the homicide was completed.* [Emphasis added.]

" 'In *People* v. *Boss,* 210 Cal. 245, 252, 253 [290 P. 881], this court said that the felony murder rule ". . . was adopted to make punishment of this class of crime more certain. It was not intended to relieve the wrongdoer from any probable consequences of his act by placing a limitation upon the *res gestae* which is unreasonable or unnatural." The homicide is committed in the perpetration of the felony if the killing and felony are parts of one continuous transaction. (*People* v. *Miller,* 121 Cal. 343 [53 P. 816].)'

"[4] Although the killing in the present case occurred about 20 hours after defendant entered the house, if the jury found that defendant committed burglary by entering the house with the intent to commit a felonious assault, the homicide and the burglary were parts of one continuous transaction. (See *People* v. *Witt,* 170 Cal. 104, 106 [148 P. 928]; *People* v. *Kelso,* 25 Cal.2d 848, 851 [155 P.2d 819]; *People* v. *Morlock,* 46 Cal.2d 141, 146-147 [292 P.2d 897]; *People* v. *Cheary,* 48 Cal.2d 301, 310, 318 [309 P.2d 431]; *People* v. *Jones,* 52 Cal.2d 636, 651 [343 P.2d 577].) Accordingly, the trial court did not err in instructing the jury that murder committed in the perpetration of burglary is murder of the first degree."

If the rules of law as enunciated in the cases above mentioned are applied to the facts of this case it is clear that there was probable cause to bind the defendants over on the charge of murder.

There was a furtherance of the conspiracy to rob and the robbery itself in what was being done by the robbers at the time they collided with the automobile in which McKain was riding and brought about his death.

Whether or not it is necessary to have a causal connection or relation between the homicide and the felony does not require discussion in this particular matter for there was a definite connection between the robbery and the homicide. The collision was the direct consequence of the effort of the robbers to escape.

The fact of the matter is that these defendants set themselves up against the law enforcement agencies of the State

of California—they were determined to kill rather than be taken into custody. They were making use of deadly forces (in firing guns and driving an automobile at an extremely high rate of speed in complete disregard of all traffic laws) in effecting their escape.

It would be unrealistic to consider that there was any cessation of criminal activity with reference to the robbery within the eight minute period with which we are concerned.

There was evinced here a depravity of mind and disregard of human life which could hardly be equalled. These defendants deliberately pursued a course of conduct which they well knew might result in depriving an innocent person of his life. Apparently from the facts as outlined that is what occurred.

It may be true, as argued by the defendants, that not every robber has an intent to kill but these particular robbers gave every outward indication of a specific design to kill if it was necessary to do so to effect their escape. As a matter of fact, as heretofore set forth, they stated to the police that the shooting was brought about because in effect they *had to make their getaway*.

There was nothing about the course which the robbers followed in this case which was not directly in furtherance of their felonious design to successfully commit an armed robbery.

They consciously and deliberately risked injury and death for all of those who might in any way imperil their escape. The deceased happened to be driving along a street in a perfectly legal manner with the traffic signals in his favor; respondents, to avoid any slowing down because to do so might mean that they would either be shot or caught, saw fit to run through the street signals and smashed into and killed the innocent occupant of that car.

There can be no question but that they had a common design to resist arrest.

█ It is clear that it is of not the slightest consequence that the robbers here did not intend to bring about the victim's death. (*People* v. *Raber,* 168 Cal. 316, 318 [143 P. 317].) It was a killing in the perpetration of a robbery, and is therefore murder in the first degree regardless of whether it was intentional or accidental. (*People* v. *Morlock,* 46 Cal. 2d 141, 146-147 [292 P.2d 897] ; *People* v. *Coefield,* 37 Cal.2d 865, 868 [236 P.2d 570].)

The robbers in this case by their statements make it clear

that the killing was committed in connection with conduct intended to facilitate escape after the robbery and as a part of one continuous transaction. (See *People* v. *Ellenberg,* 165 Cal.App.2d 495, 499-500 [331 P.2d 1053].)

The act of asportation was sufficiently complete, even before the police took up the chase (some 19 blocks from the liquor store), to have supported a prosecution for robbery, yet the crime of robbery was still in course of perpetration throughout the flight of the robbers until they had reduced the property taken to their unmolested dominion. Under no interpretation of the evidence had the loot in this case been reduced to any satisfactory "dominion." The robbers were in their getaway car driving at high rates of speed, shooting at the officers and in many ways endangering the lives of decent citizens. These robbers were of the mind that human life was not to be permitted to stand in the way of their escape.

To the successful execution of a robbery the escape of the robbers with the loot is as important as the original gaining possession thereof. See *People* v. *Perry,* 14 Cal.2d 387 [94 P.2d 559, 124 A.L.R. 1123].

The order dismissing the said cause as to each defendant is reversed.

Wood, P. J., and Lillie, J., concurred.