[Crim. No. 1923.   Fourth Dist.   Mar. 6, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT HENRY PULLEY et al., Defendants and Appellants.

Frank L. Williams, Jr., Public Defender, Frank C. Scanlon, Deputy Public Defender, Bennett & Reintjes, Bennett, Reintjes & Leonard and Paul E. Reintjes for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendants-appellants were convicted by a jury of the crime of murder (second degree) in violation of Penal Code, section 187. Motions to reduce the charge to manslaughter, for new trial, and applications for probation were denied. Defendants filed separate notices of appeal from the judgment. The facts surrounding the killing of John Arthur Hoecker, the deceased, are in little dispute.

## FACTS

On January 19, 1963, at about 4 p.m., Mrs. Lorraine B. Sheppard, the owner of a white, 1962 Chevrolet Impala, parked the car on a street in Van Nuys. When she came out of a beauty parlor about 6 p.m. the car was gone. She had given no one permission to take it.

A traffic officer who was patrolling the Santa Ana Freeway near Central Avenue on a motorcycle was parked on the southbound Magnolia onramp at about 7:15 p.m. A white Chevrolet traveling at a high rate of speed attracted his attention and the officer followed it at 70 miles per hour. He turned on his red light and siren. The Chevrolet slowed down and went over on the Harbor offramp where it stopped. The occupants were talking and gesturing with their hands. All of a sudden the car started up and proceeded south, nearly colliding with another car. The officer pursued the defendants with the siren and lights on, traveling about 75 to 80 miles per hour. While traveling at this speed, while about 200 to 300 feet from an intersection, the traffic lights turned red and defendants failed to stop but ran into traffic and cars proceeding with the green light. A multicar collision ensued which looked like an explosion. A man, John A. Hoecker, flew through the windshield of a Corvair and died as a result of the collision. Injuries occurred to others. The police officer ran over to the white Chevrolet and saw defendant Pulley, its operator, standing near the Chevrolet. Defendant Martin was seated in the Chevrolet. Both defendants were put under arrest. The car was the Chevrolet stolen from Mrs. Sheppard. Beer bottles were found in the car. Defendant Pulley made a statement to the police that he was 19 years old, in the U.S. Navy, and that he and Martin were walking along and saw a car near a parking lot in Van Nuys and they "got in it and took off." He stated that they picked up a hitchhiker and he

bought them some beer and they took him to the place he was going to and went on the freeway and an officer started chasing them. He said that they got off the freeway, the lights changed, and the cars started going across in front of them and the Chevrolet hit them and ''got into a wreck.''

Martin's statement was that he was 18 years old, lived in Van Nuys, and that defendant Pulley came over to his house at about 5 p.m. and wanted to go ''cruising'' so they walked over, got into a car and Pulley told him it was stolen; that they drove around for awhile and Pulley wanted to go to San Diego, and while going south on the freeway he drove ''a little bit fast'' and the highway patrol officer pulled them over and Pulley argued with him (Martin) about going ahead and Martin said, ''Go ahead and try'' and Pulley drove on and down some streets quite fast and he (Martin) tried to get Pulley to slow down but he came to an intersection where a traffic red light was against them and traffic was in the intersection; that he ducked down so that he would not be hurt and the collision occurred as described, and that the officers then came over to the car.

Pulley said that they took the car together and were aware of the fact that the officer was behind them so he guessed that both of them decided to outrun the policeman; and that they didn't want to be caught with a stolen car.

Martin said that they had had a beer apiece and were starting on a second one. Later, Martin said that he decided to steal a car when he saw one of his friends drive by in a new car; that they picked up a hitchhiker who bought some beer for them and then they decided to go to San Diego; that he kept telling Pulley to stop because having an accident would really cause them trouble.

A number of character witnesses were called on behalf of defendants and testified as to their good reputation for truth and honesty. Some of the witnesses, however, had heard of some blemishes on their records, to the effect that Pulley had broken into a property room on two occasions and Martin had trouble in the U.S. Navy and had been arrested in Texas for theft of a motor vehicle.

Pulley testified on his own behalf and said that he and Martin took the Chevrolet involved with the intention of driving it around; that it was his fault the man was killed, but not Martin's because Martin had tried to get him to stop; that he (Pulley) knew he was doing wrong in taking the car, but he thought he could drive through the intersec-

tion against the red signal and make it, but found that he could not do so, so he put on his brakes and tried to stop; that when they were first stopped by the officer, they both agreed that they would try to get away and they drove on at a high rate of speed.

Martin testified that he saw the officer behind them; that he told Pulley to pull over but Pulley was afraid because he might be discharged from the Navy and he (Martin) agreed with him and said, "Go ahead" and they went on and five or six times he told Pulley to stop but Pulley did not do so. Martin admitted taking the car with Pulley in the first place and he thought it was wrong to a certain degree to take the car but he didn't think it was so wrong if he was going to bring it back.

The main and basic contentions of defendants on this appeal are that:

(1) A conviction of murder, under the felony-murder doctrine, cannot be sustained in this case because a violation of Vehicle Code, section 10851, is not a common law felony and is not an offense which can be classified as violent or dangerous to human life.

(2) The trial court erred in instructing the jury that if the death occurred while violating Vehicle Code, section 10851, it is murder in the second degree, even though the death is unintentional or accidental.

(3) The trial court erred in refusing to instruct the jury as requested upon the provisions of Penal Code, sections 484 and 487 (grand theft) and on the issue of whether or not the theft was still being committed at the time of the homicide.

Defendant Martin also contends that he made an effort to withdraw from the crime prior to the collision and that after he made his attempt to withdraw he was not responsible for the continuance of the crime by his coconspirator.

Vehicle Code, section 10851, provides that: "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the vehicle, whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in the driving or unauthorized taking or stealing is guilty of a felony. ..." Penal Code, section 189, provides that: "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is com-

mitted in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under section 288, is murder of the first degree; and all other kinds of murders are of the second degree.''

It has been stated that the felony-murder doctrine applies both in first and second degree murders. ▮ If the unlawful killing occurs in the perpetration of one of the serious felonies listed in section 189, Penal Code, it is first degree murder. (*People* v. *Doyell*, 48 Cal. 85, 94; 1 Witkin, California Crimes, § 325, p. 295.) In *People* v. *Balkwell*, 143 Cal. 259 [76 P. 1017], it was held that where the killing results from a criminal abortion (not an offense mentioned in Penal Code § 189), the felony-murder doctrine applies. (See also *People* v. *Wright*, 167 Cal. 1, 6 [138 P. 349]; *People* v. *Hickok*, 28 Cal.App.2d 574 [83 P.2d 39]; *People* v. *Powell*, 34 Cal.2d 196 [208 P.2d 974]; *People* v. *Hawkins*, 177 Cal.App. 2d 714 [2 Cal.Rptr. 524].) ▮ Therefore, a violation of Vehicle Code, section 10851, may come within this rule unless, when defendant committed the felonious act, the chance of death resulting therefrom was so remote that no reasonable man would have taken it into consideration. (*Regina* v. *Whitemarsh* (1898) 62 Just. P. 711; *Rex* v. *Lumley* (1911) 22 Cox. C.C. 635.) ▮ It is necessary to show that the death ensued in consequence of the felony and it is felony-murder if the homicide is within the res gestae of the initial felony. (*State* v. *McCarthy*, 160 Ore. 196 [83 P.2d 801].) In *People* v. *Ketchel*, 59 Cal.2d 503, 524 [30 Cal.Rptr. 538, 381 P.2d 394], it was held that to establish a murder as first degree murder under the felony-murder rule, it is not necessary to prove a strict causal relationship between the felony and the homicide. The courts of this state had this question under consideration in *People* v. *Ulsh*, 211 Cal.App.2d 258, 259 [27 Cal.Rptr. 408]. There, defendants went to rob a liquor store and did so. A policeman received an alarm and notice of the robbery. Defendants endeavored to escape in an automobile at an excessive speed. Red lights on the police car were turned on and the siren was going. Gunfire was exchanged. Defendants continued on and at an intersection defendants' car crashed into another car and killed the driver of that car. The distance from the liquor store to the intersection was 3.2 miles. The court held that a homicide committed while the conspirators were attempting to flee from the scene of a robbery with the fruits thereof in their possession was committed in the perpetration of the robbery

and hence was first degree murder; that to establish a murder as first degree murder under the felony-murder rule of Penal Code, section 189, it is not necessary to prove a strict causal relation between the felony and the homicide; that Penal Code, section 189, making murder that of the first degree when committed in the perpetration of, or attempt to perpetrate, certain felonies, was adopted for the protection of the community and its residents, not for the benefit of the lawbreaker; it obviates the necessity for any technical inquiry as to whether there has been a completion, abandonment or cessation of the felony before the homicide was committed; that where a homicide was committed in connection with conduct intended to facilitate escape after a robbery and as part of one continuous transaction while pursuing a common design to resist arrest, it was immaterial that the robbers did not intend to bring about the victim's death; the killing being in the perpetration of a robbery, it was first degree murder regardless of whether it was intentional or accidental; that if a homicide is committed by one of several confederates while engaged in perpetrating the crime of robbery in furtherance of a common purpose, the person or persons engaged with him in the perpetration of the robbery, but who did not actually do the killing, are as accountable to the law as though their own hands had intentionally fired the fatal shot or given the fatal blow, and such killing is first degree murder; and that the jury has no option but to return a verdict of first degree murder whether the killing was intentionally or accidentally done. See also 108 American Law Reports 847, where it is said that: ''The weight of authority is that if a number of persons enter upon the commission of a felony, all are criminally responsible for the death of a person that ensues as a natural consequence of the common felonious purpose, although the one accused may not have done the actual killing. This rule has been deemed broad enough to include homicides committed in attempts to escape from the scene of the crime, or 'where the killing is done immediately after the conclusion of the project, for the purpose of preventing detection.' ''

It is defendants' contention that the rule should be qualified and limited with respect to felonies that are not dangerous to human life.

Perkins on Criminal Law, Foundation Press (1957), page 36, expresses what he believes to be a modern viewpoint and concludes that there must be an element of human risk in the felony for the felony-murder rule to apply, but he appears to

qualify the degree of human risk necessary. He puts the rule this way: "Homicide is murder if the death ensues in consequence of the perpetration or attempted perpetration of some other felony unless such other felony was not dangerous of itself and the method of its perpetration or attempt did not appear to involve any appreciable human risk." To this may be added the explanation, previously suggested, that the danger here referred to may fall considerably short of a plain and strong likelihood that death or great bodily injury will result, but must not be so remote that no reasonable man would have taken it into consideration.

By any reasonable standard, stealing and driving a stolen car and endeavoring to escape pursuing officers with the stolen car, entering an intersection against all rules of the road at 70 to 80 miles per hour and crashing with other cars lawfully proceeding therein, are highly dangerous. Violence in evading the police is within the ambit of risk. Death here was not a freak coincidence, but an expectable incident of the felony, part of the risk that is set in motion by the original crime. (*Lee* v. *United States*, 112 F.2d 46, 49 [72 App. D.C. 147].) (See also *People* v. *Thomas*, 58 Cal.2d 121, 124 [23 Cal.Rptr. 161, 373 P.2d 97].)

Several other arguments embellish this contention raised by defendants, i.e., that Vehicle Code, section 10851, is a new law, postdating the origin of the felony-murder rule and that the rule therefore does not encompass that section. We see no merit to this argument. (*People* v. *Wallace*, 2 Cal.App.2d 238 [37 P.2d 1053]; *People* v. *Collins*, 80 Cal.App.2d 526 [182 P.2d 585]; *United States* v. *Sharpnack*, 355 U.S. 286 [78 S.Ct. 291, 2 L.Ed.2d 282].) It would appear that the application of the felony-murder rule to this case is well within the ambit of the rule and fairly represents legislative intent. We see no purpose in curbing the felony-murder rule as applied to the facts in the instant case. (*People* v. *Ulsh, supra,* 211 Cal.App.2d 258; *People* v. *Ketchel, supra,* 59 Cal.2d 503.)

Next, in reference to the instructions, the court gave instructions on Vehicle Code, section 10851, as a base for the felony-murder rule. Defendants now complain of the refusal of a proffered instruction on grand theft. Defendant Martin points to a number of references in the record to stealing and concludes that the jury could have found an intent to steal. Defendant Pulley also contends that a conviction of grand theft auto would have been possible and Martin advanced the

theory that since the defendants had been away from the scene of the parking lot where the car was taken by them for approximately three hours, and were approximately 50 miles from such location, it is reasonable that the jury could find that the felony had been consummated prior to the accident, thereby taking it from the felony-murder doctrine (citing *People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281]; *People* v. *Miller*, 57 Cal.2d 821 [22 Cal.Rptr. 465, 372 P.2d 297]) and argues that this is so despite defendants' testimony that they lacked an intent to steal. The trial court found in this action that under the evidence the grand theft instruction was not applicable. The charge was murder based upon a violation of Vehicle Code, section 10851, a felony. The testimony of defendants alone would destroy any claim that it was their intention to commit theft under Penal Code, sections 484-487, subdivision 3. The defendants were still in the act of violating Vehicle Code, section 10851, when the death occurred. Even under Penal Code, section 484, the offense could continue through the escape. (*People* v. *Ketchel*, *supra*, 59 Cal. 2d 503, 524; *People* v. *Boss*, 210 Cal. 245 [290 P. 881]; *People* v. *Kendrick*, 56 Cal.2d 71 [14 Cal.Rptr. 13, 363 P.2d 10].) No prejudicial error resulted in refusing the instructions offered on the basis that a grand theft had already been committed when the deceased was killed. ▪ Guilt under Vehicle Code, section 10851, remains incontestable. That section not only punishes for the original taking, but also the subsequent driving of the car. (*People* v. *Cuevas*, 18 Cal.App. 2d 151 [63 P.2d 311].)

▪ Objection is made to a given instruction stating that: ''Although there are two degrees of murder, the evidence in this case is such that either both of the defendants or one of them is innocent of the charge of murder or one or both of the defendants are guilty of murder in the second degree; for death which results from the driving of a vehicle without the consent of the owner in violation of section 10851 of the Vehicle Code/a felony/constitutes murder of the second degree whether the death was intentional, unintentional or accidental.'' This instruction is lacking somewhat in clarity but expresses the meaning intended to be conveyed and emphasizes the fact that defendants could not be convicted of murder of the first degree. (*People* v. *Powell*, 34 Cal.2d 196 [208 P.2d 974]; *People* v. *Deacon*, 117 Cal.App.2d 206, 210 [255 P.2d 98].)

▪ Objection is made to the trial court's instruction that: ''If a murder is committed by one of two confederates

engaged in driving a vehicle not their own in violation of section 10851 of the Vehicle Code, the person engaged with him in perpetration of that crime, but who was not actually driving the vehicle, is as accountable to the law as though he had been driving the vehicle himself unless he has withdrawn from the commission of the crime.'' This instruction was authorized under the evidence. (*People* v. *Cabaltero*, 31 Cal. App.2d 52, 57 [87 P.2d 364]; *People* v. *Ulsh, supra*, 211 Cal.App.2d 258.)

The trial court gave defendants' proffered instruction, as modified, as to the distinction between murder and manslaughter. The jurors were expressly told that in the event of a reasonable doubt as between them they had to choose manslaughter rather than murder. The portion of the instruction given, when considered with the other instructions given, sufficiently covered the subject matter. All the elements of a homicide incurred in the commission of a violation of Vehicle Code, section 10851, are present in the instant case.

While the instructions given by the trial court did not fully qualify the rule to the effect that this rule applies unless such other felony was not dangerous of itself and the method of its perpetration or attempt did not appear to involve any appreciable human risk, as suggested in Perkins on Criminal Law, supra, page 36, we conclude that no prejudicial error resulted in view of the other instructions given and the evidence presented in this case. Defendants offered no instruction as to any exceptions to the rule. (*People* v. *Warren*, 16 Cal.2d 103, 117 [104 P.2d 1024]; *People* v. *Wade*, 53 Cal.2d 322, 334 [1 Cal.Rptr. 638, 348 P.2d 116].) In *Powers* v. *Commonwealth*, 110 Ky. 386, 416 [61 S.W. 735, 742], it was held that if death occurred in the act of removal of a cornerstone, a felony in Kentucky, ''... no Christian court would hesitate to apply this limitation.'' See also *People* v. *Pavlic*, 227 Mich. 562 [199 N.W. 373, 35 A.L.R. 741]. In connection with this instruction, the trial court did give a separate instruction on proximate cause of death, as set forth in CALJIC (rev. ed.) Instruction No. 312, page 267. The evidence in the instant case on the subject is uncontradicted and shows no limitation or exception to the rule stated and a failure to set forth any exceptions in the instruction was not prejudicial.

Complaint about certain testimony of a Sergeant Franklin being inadmissible is without merit. The trial court properly

sustained objections to it and any answers given were ordered stricken.

The claim that there was no evidence contradictory to the testimony of defendants that Martin did attempt to withdraw from the attempted acts of the driver, Pulley, prior to the killing of the deceased and that therefore the jury was bound to accept that testimony is without merit. The jury had the right to believe or disbelieve them in this respect and apparently, under the instruction given on the subject, did disbelieve them.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.