[No. B008779. Second Dist., Div. Seven. Feb. 19, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND DAVID SCHAFER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to rules 976 and 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of sections II and III.

COUNSEL

Mary Anne Healy and Robert B. Le Corvec, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—This appeal is from a sentence imposed pursuant to a judgment convicting appellant of first degree murder based on the felony-murder rule. The central issue in this case is whether the principles enunciated in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], require a showing of intent to kill in order to support a conviction based on the felony-murder rule without a special circumstance allegation.

### FACTS AND PROCEEDINGS BELOW

On December 11, 1980, at approximately 1 a.m., Rick Brockman and James Lampkin were seated in the front seat of a car parked in the parking lot in the rear of a bar. Ricky Tucker and appellant Schafer were passengers in a car driven by Jerry Shaw. Schafer suggested the threesome "go make some money." Shaw drove to the bar and parked in a nearby alley while the three planned how the robbery would take place. Shortly thereafter, Shaw handed Tucker a .22 sawed-off rifle and handed Schafer a .38 revolver. Shaw himself remained in the car to act as the getaway driver. Tucker and Schafer approached the passenger side of the parked car in which Brockman was seated. While pointing the .38 revolver at Brockman, Schafer opened the door and demanded his money. Schafer then told Tucker, his partner, to go around to the driver's side because Lampkin was trying to start the car. A brief struggle ensued between Lampkin and Tucker. Tucker managed to open the door, but Lampkin pushed him away. Tucker turned and walked away. Schafer then fired the .38 revolver killing Lampkin. After several shots rang out, both Tucker and Schafer ran back to the parked car where Shaw awaited them. They took no money from Lampkin or Brockman.

The day after the shooting Officer MacLyman of the Long Beach Police Department received a telephone call from an unidentified caller who inquired about Lampkin's condition. The caller stated, "Ha, ha, I did it" and hung up.

A jury found Schafer guilty of first degree murder (count I) and the use and special circumstance allegations to be true. Schafer was also convicted of two counts of attempted robbery (counts II and III). He was sentenced to state prison for life without possibility of parole on the murder conviction. He was also sentenced to two additional years on the use finding and a total of four years on the robbery convictions, these sentences to run concurrently with the murder sentence.

In 1983 we affirmed the judgment. Schafer's petition for hearing was granted and, ultimately, the case was retransferred to us for reconsideration

in light of *Carlos* v. *Superior Court*. Upon reconsideration, we issued a remittitur to the superior court for the purpose of allowing a retrial on the special circumstance allegation, or, if the district attorney elected not to retry Schafer, then for resentencing on the murder conviction. The conviction was affirmed in all other respects.

On remand, at the probation and sentencing hearing, Schafer moved to have the offense reduced. The trial court denied the motion and resentenced Schafer in conformity with the remittitur issued by this court. The special circumstance allegation was stricken on a motion by Schafer.

The trial court sentenced Schafer to a term of 25 years to life, plus an additional 2-year enhancement pursuant to Penal Code section 12022.5.

Schafer now appeals the resentencing imposed by the trial court on the theory that, in a felony-murder case, where a special circumstance allegation has been stricken, *Carlos* still requires a showing of intent to kill to support a conviction. He further contends the trial court abused its discretion in denying his motion to reduce the offense, and the sentencing imposed as a result constituted cruel and unusual punishment.

## I. *Carlos* Does Not Require an Intent to Kill Finding in a Felony-murder Case Which No Longer Involves a Special Circumstance Allegation as Defined in Penal Code Section 190.2[1]

Under the California statutory scheme, a person may be convicted of first degree murder where there is either a showing of premeditation, delib-

---

[1]Penal Code section 190.2, in pertinent part, states: "(a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true: ... [¶] (17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies: [¶] (i) Robbery in violation of Section 211. [¶] (ii) Kidnapping in violation of Sections 207 and 209. [¶] (iii) Rape in violation of Section 261. [¶] (iv) Sodomy in violation of Section 286. [¶] (v) The performance of a lewd or lascivious act upon person of a child under the age of 14 in violation of Section 188. [¶] (vi) Oral copulation in violation of Section 288a. [¶] (vii) Burglary in the first or second degree in violation of Section 460. [¶] (viii) Arson in violation of Section 447. [¶] (ix) Train wrecking in violation of Section 219.

"(b) Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraphs (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found ... to be true."

erate intent, or malice. However a person may also be convicted of first degree murder even in circumstances where none of the above elements are shown. Of special relevance here, first degree murder also includes homicide resulting from the commission or attempted commission of one of several felonies enumerated in Penal Code section 189.[2] Under this scheme, no intent to kill need be established, all that is required is an intent to commit the underlying felony. This doctrine is more commonly known as the felony-murder rule.

There is also a statutory scheme which allows a person to be sentenced to death or life imprisonment without possibility of parole if he committed a killing during the commission or attempted commission of any of the felonies enumerated in section 190.2. The California Supreme Court has construed this statutory scheme to require the jury to find the defendant had an intent to kill before the defendant can receive such severe punishment. (*Carlos* v. *Superior Court, supra,* 35 Cal.3d 131.) The special circumstance statute, Penal Code section 190.2, consists of two sections which are of concern to us: subdivision (a)(17), which is the felony-murder provision and incorporates most of the felonies listed in section 189, and subdivision (b), which sets out punishment for accomplices who aid or assist in the murder during the commission of any of the felonies enumerated in the statute.

The focus of this opinion is to determine whether section 189 mandates an intent to kill requirement as does section 190.2.

Against this background appellant argues that *Carlos* principles require a showing of intent to kill in cases involving murder without special circumstance allegations as well as cases involving murder with special circumstance. We disagree.

In *Carlos,* the court was confronted with the issue of whether or not the defendant could be convicted of felony murder with special circumstances if he did not intend to kill or aid in the commission of a killing. In resolving that issue the court analyzed the requirements of section 190.2, subdivision (a)(17) and subdivision (b). The court concluded, "[w]ith regard to section 190.2 generally, it is reasonably clear that subdivision (b) imposes an intent to kill requirement before an accomplice can be found guilty of murder with special circumstances under most of the special circumstance paragraphs. . . .

---

[2]Penal Code section 189 states that "[a]ll murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree. . . ."

[¶] With regard to felony murder, . . . [i]t almost certainly imposes an intent to kill requirement for an accomplice to any nonsection 189 murder, since the actual killer in such a case could not be found guilty of murder with special circumstances absent such an intent. Since subdivision (b) draws no distinction between section 189 murders and those not encompassed in that section, and seeks to avoid any distinction between accomplices and actual killers, a uniform and sensible interpretation of the subdivision would read it as imposing an intent to kill requirement for the accomplice to any felony murder, and by implication such a requirement for the actual killer himself." (35 Cal.3d at p. 142.)

Additionally, in determining whether the intent to kill requirement was constitutionally mandated, the court analyzed the 1978 California Death Penalty initiative from which section 190.2 was derived. In so doing it took note of several United States Supreme Court cases which dealt with the requirements for the imposition of the death penalty based on felony-murder special circumstances convictions. In each case the United States Supreme Court held an intent to kill must first be established, for accomplices and actual killers alike, before the death penalty may be imposed. The court reasoned that not requiring an intent to kill in such cases would violate the Eighth Amendment cruel and unusual punishment clause. (See *Carlos, supra,* 35 Cal.3d pp. 147-151.)

Upon thorough analysis of these decisions, the *Carlos* court concluded the 1978 death penalty statute should be interpreted so as to avoid questions of constitutional validity. Thus, the court found the California death penalty statute required an intent to kill and was consistent with the United States Supreme Court death penalty cases.

As can be seen, the court, in *Carlos,* expressly limited its application of the intent to kill requirement solely to cases involving murder with special circumstances. Nowhere in the opinion did the court state or imply, as appellant asserts, the *Carlos* principles should be extended to felony-murder cases *without* special circumstances.

Contrary to appellant's assertions, section 189 does not require an intent to kill because its purpose is not to determine who deserves the death penalty or life imprisonment. Rather, its purpose is to " 'deter those engaged in felonies from killing negligently or accidentally . . . .' [¶] The felony-murder rule . . . served to distinguish among felons, punishing as murderers those who, although intending only some lesser felony, encountered an unintended killing." (35 Cal.3d at p. 146.) It would be inconsistent with this purpose to superimpose an intent to kill requirement on the felony-murder rule.

Our conclusion is further supported by *People* v. *Dillon* (1983) 34 Cal.3d 441, 475 [194 Cal.Rptr. 390, 668 P.2d 697]. The court, after discussing whether or not malice was presumed in felony-murder cases, stated "[w]e take the same view of the 'conclusive presumption of malice' in felony-murder cases. In every case of murder other than felony murder the prosecution undoubtedly has the burden of proving malice as an element of the crime. . . . Yet to say that (1) the prosecution must also prove malice in felony-murder cases, but that (2) the existence of such malice is 'conclusively presumed' upon proof of the defendant's intent to *commit the underlying felony,* is merely a circuitous way of saying that in such cases the prosecution *need prove only the latter intent.*" (Citations omitted.) (*Ibid.*; italics added.) The court further stated, "[t]he 'substantive statutory definition' of the crime of first degree felony murder in this state does not include either malice or premeditation: 'These elements are eliminated by the felony-murder doctrine and the only criminal intent required is the specific intent to commit the particular felony.' " (*Dillon* at p. 475 citing from *People* v. *Cantrell* (1973) 8 Cal.3d 672, 688 [105 Cal.Rptr. 792, 504 P.2d 1256].)

It is clear from *Dillon* appellant's intent to kill is irrelevant since the main function of the felony-murder rule is to remove the requirement of a specific intent to kill. ■ The only intent required is that appellant intended to commit the underlying crime of robbery. Here the facts indisputably show Schafer had such an intent.

■ Schafer next argues the degree of murder cannot be assigned "unless and until an intent to kill" has been established. To support his argument he relies on *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826] and *People* v. *Turner* (1984) 37 Cal.3d 302 [208 Cal.Rptr. 196, 690 P.2d 669]. Both cases involved felony murder with special circumstances where the courts affirmed the felony-murder convictions but reversed the special circumstance findings because the jury was not instructed the felony-murder special circumstance required an intent to kill or to aid in killing. Even though both cases are factually similar, there is nothing in the language of *Garcia* or *Turner* that states or implies the degree of murder cannot be assigned unless an intent to kill has first been established. Appellant has failed to provide any cases supporting his contentions, and instead makes bald assertions unsupported by law.

Contrary to appellant's position, section 189 makes it clear the degree of murder is automatically assigned by operation of the law. "[M]urder . . . which is committed in the perpetration of, or attempt to perpetrate, arson, rape, *robbery* . . . is murder of the first degree; and all other kinds of murders are of the second degree." (Italics added.) Because appellant committed murder in the attempted perpetration of a robbery, he was properly convicted of first degree murder.

The *Dillon* opinion further supports our conclusion in stating, "[w]ith respect to any homicide resulting from the commission of or attempt to commit one of the *felonies* listed in the statute, our decisions generally hold section 189 to be . . . a degree-fixing device . . . and by operation of the statute the killing is deemed to be first degree murder as a matter of law." (Italics in original.) (34 Cal.3d at p. 465.) This position was also taken in *People* v. *Mitchell* (1964) 61 Cal.2d 353, 360 [38 Cal.Rptr. 726, 392 P.2d 526]. There the court affirmed defendant's conviction of first degree murder where he shot and killed a police officer while attempting to escape from the scene of the robbery he had just committed. In addressing the issue of whether the evidence was sufficient to support a finding of first degree murder the court held, "a killing committed during the course of a robbery is murder in the first degree whether the killing is wilful, deliberate, and premeditated, or merely accidental, and whether or not the killing is planned as part of the commission of the robbery." (See also *People* v. *Lookadoo* (1967) 66 Cal.2d 307 [57 Cal.Rptr. 608, 425 P.2d 208]; *People* v. *Ulsh* (1962) 211 Cal.App.2d 258 [27 Cal.Rptr. 408].)

## II., III.*

. . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 1987.

---

*See footnote, *ante,* page 786.