## LELAND J. LAKES v. STATE.

No. A-9111.    April 16, 1937.
(67 Pac. [2d] 457.)

Holden & Coe, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., Lewis R. Morris, Co. Atty., and John F. Eberle, Asst. Co. Atty., for the State.

DAVENPORT, P. J. The plaintiff in error, Leland J. Lakes, was convicted of murder in the district court of Oklahoma county, upon an information charging that in said county, on or about the 14th day of March, 1935, he did kill and murder Arthur Heenan, by shooting him with a pistol. The jury assessed his punishment at death. A new trial was denied, and, in pursuance to the verdict of the jury, he was sentenced to suffer death by electrocution. From the judgment pronounced and entered on the 21st day of October, 1935, he appealed by filing in this court on March 14, 1936, a petition in error with casemade.

It appears that the homicide was committed on the 14th day of March, 1935, in the city of Oklahoma City, Oklahoma county; that Arthur Heenan was shot and killed by the plaintiff in error, hereinafter referred to as the defendant.

The substance of the testimony in this case being as follows: On the night of March 14, 1935, C. V. Morris and his family, who lived at 1125 West Thirty-First street, in Oklahoma City, left their home, locking all the doors and windows, and was out until about 8:30 or 9 o'clock in the evening. When Mrs. Morris drove into the driveway and got out of her car and started into the house she heard a noise, and discovered a man in the house who went out through a window in one of the north bedrooms.

She rushed out of the house, and Arthur Heenan, who lived across the street, had also discovered the man who was burglarizing the Morris home, and came out with his pistol.

The deceased, Arthur Heenan, and Mrs. Morris got in her car and backed out to the street and started to follow the man who had gone out of the house; in order to head him off they drove a block south and on around until finally they came to the intersection of Thirty-Second and Olie, and Mrs. Morris recognized the defendant, Leland J. Lakes, as the man she saw in their house. Mrs. Morris in her statement stated when they got to the intersection of Thirty-Second and Olie, Mr. Heenan, who was driving with her, opened the car door and walked around to the front of the car to meet this man whom they had both seen leaving the Morris home; Mr. Heenan said, "Young fellow, I want to see you." The defendant stopped and with a kind of look of surprise said, "You don't want to see me." Mr. Heenan said, "Yes, we want to see what you have got on you here." At that time Mr. Heenan had a gun in his right hand; he got out of the car and walked around with the gun in his hand to the right-hand side of the fender. "When Mr. Heenan put his gun on the defendant he had his hands up like this, not close to him, but just this way. Mr. Heenan led him around the car and began searching him, he was on the east side of the car. Mr. Heenan began searching him, and first handed me a carton of Camels which he had taken from his outside coat pocket, and next handed me a gun that is marked Exhibit No. 7. Mr. Heenan said to me, 'Is this yours,' and I said, 'Yes, that is ours.' I took the gun and laid it down between the seats in the car; the gun belonged to Mr. Morris, my husband; it was taken from the chifforobe in our bedroom where Mr. Morris kept his papers.

Mr. Heenan also handed me a box of dice, or it looked like dice—one of our boxes.

"When he started to put the defendant in the car, he said, 'Mrs. Morris, what shall we do with him, shall we take him down,' and I said, 'Yes, if you will, take him down'—meaning to the police station.

"Mr. Heenan stepped around toward the south to open the back car door; I was sitting on the right side of the car—I had scooted over on that side; as Mr. Heenan opened this door the defendant wheeled and shot him; I saw the defendant when he pulled the gun and wheeled around; he did not say anything; when Mr. Heenan opened the door and pushed him, he whirled and said, 'Oh, yeah,' and shot; I heard two shots; when the gun was discharged Mr. Heenan stumbled backwards south and east; while falling Mr. Heenan grabbed himself in the stomach and said, 'My God, Mrs. Morris, that fellow has shot me'; he went clear down to the pavement; the defendant turned and ran up Thirty-Second street and Art fell back on his heels and fell clear back to the pavement, and then raised up with his little gun in his hand and took aim at the fellow—looked like he held his gun this way—(indicating) and shot; I remember his shooting once. The defendant ran up Thirty-Second street about half a block and turned north between some houses and through a yard and disappeared. About the time he turned he staggered just a way over; wasn't running fast, he was taking long strides and looking back most of the time." Witness then identified the pistol that was taken off the defendant.

The proof shows that the defendant was burglarizing the Morris home and when discovered he ran out, and was followed by the deceased, Arthur Heenan, and Mrs. Morris

until overtaken at the intersection of Thirty-Second street and Olie, and placed under arrest by Mr. Heenan. Mr. Heenan searched the defendant and found a gun and dice box belonging to Mr. Morris that had been taken from the Morris home. Mr. Heenan took some cigarettes from the defendant, and, when the deceased, Arthur Heenan, started to put the defendant in the car to take him to the police station, as he turned to open the door of the car, the defendant wheeled and fired the fatal shot at the deceased.

The proof shows that Mr. Heenan was a private citizen, but saw the defendant engaged in burglarizing the Morris home and took his gun and joined Mrs. Morris and followed the defendant to where the fatal shot was fired.

It is further shown that at the time the defendant committed the homicide he was fleeing from where he had been disturbed in committing the burglary, which under the laws of this state is a felony, and the only excuse defendant had for firing the fatal shot was to avoid being placed in jail upon a charge of burglary, for which he was caught in the act.

It is not disputed by the testimony of the defendant that he fired the shot that took the life of Arthur Heenan, nor is it disputed that the property taken from him before he fired the fatal shot belonged to the Morris family. The defendant's testimony attempts to show there was no intention to kill, but that the shot was fired, not for the purpose of taking the life of any one, but for the purpose of preventing his being taken and placed in jail.

The testimony shows that after the shooting the defendant escaped and was gone until the next afternoon or evening, when he appeared at the home of Mr. C. E.

Stewart, who lived at 35 East Second street, in Oklahoma City, and asked Mr. Stewart if he would do him a favor, and Mr. Stewart told him it all depended on what it was, and the defendant asked him to call the officers and an ambulance, and Mr. Stewart stated, "I called the officer, but did not call an ambulance."

It is further shown that the deceased, after he had fallen to the ground from the wound inflicted by the defendant, raised himself and steadied his arm, aimed a pistol at the defendant where he was fleeing and shot him through the shoulder. The defendant stated to Mr. Stewart that he was the man who had shot the oil man the night before.

The foregoing is the substance of the testimony introduced by the state and the defendant. A great deal of testimony was introduced, and many questions asked on immaterial points that did not prove or disprove any issue joined in the trial of the defendant.

In his assignment of errors the defendant alleges 25 errors as grounds for reversal of this case. Many of the questions raised by the assignment of errors are questions immaterial to the question as to the character of the homicide committed by the defendant. It is not disputed that the defendant fired the shot that took the life of the deceased, Arthur Heenan, after he had been placed under arrest by the deceased and partly searched. That the shot was fired by the defendant when the deceased started to open the door of the car to put the defendant in the car with the intention of driving him to the police station.

Arthur Heenan, the deceased, as shown by the record, was not an officer, but was a citizen and resident of the city of Oklahoma City, and lived across the street

from the Morris home, which the defendant was burglarizing, and, as a citizen of the state seeing the burglary being committed by the defendant, and seeing him leave the house through the window, joined Mrs. Morris and followed the defendant, and, as shown by the record, placed the defendant under arrest.

The action of the deceased is fully authorized by the statutes of Oklahoma, which give any citizen the right to make an arrest when a felony is being committed in his presence or he has reasonable grounds and information to believe the defendant has committed a felony. Sections 2786 and 2787, O. S. 1931 (22 Okla. St. Ann. §§ 202, 203), are as follows:

"2786. A private person may arrest another:

"First. For a public offense committed or attempted in his presence.

"Second. When the person arrested has committed a felony although not in his presence.

"Third. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

"2787. He must, before making the arrest, inform the person to be arrested of the cause thereof, and require him to submit, except when he is in actual commission of the offense or when he is arrested on pursuit immediately after its commission."

It is not disputed that the deceased and Mrs. Morris immediately pursued the defendant as he fled from the Morris home, where he was burglarizing it when discovered, and the defendant was placed under arrest by the deceased. In the opening statement of the defendant to the jury it is stated the defendant did not intend to take the life of the deceased, that he fired the shot at the de-

ceased unintentionally, or from pain caused by the wound inflicted by the deceased, that the gun was discharged striking the deceased, inflicting the fatal injury that caused his death.

In support of this contention some testimony was introduced to show that at the police station the defendant was able to use his hand to sign his name to a statement made by him to the officers, and proof by one of the doctors was offered tending to show that he had the use of his hand sufficiently to sign his name. This testimony was offered by the defendant in support of his contention that he did not intend to harm the deceased, that it was possible when he received the wound inflicted by the shot from the gun of the deceased that he clamped his finger on the trigger and his gun was discharged, entering the body of the deceased. Throughout the trial of the case there is no competent testimony offered by the defendant contradicting the testimony of the state as to the burglarizing of the house, the pursuit by the deceased and Mrs. Morris of the defendant, where he was overtaken, placed under arrest, and partially searched and a pistol and other things taken from his person, and that the defendant drew the pistol and fired the shot into the body of the deceased, from which wound he died.

The defendant in his brief and argument urges that he was deprived of a fair and impartial trial by the actions of the county attorney and his assistant, and some remarks made by the trial court.

In the body of the opinion, in Brooks v. State, 33 Okla. Cr. 296, 243 Pac. 998, this court said:

"A defendant, whether guilty or not, is entitled to have the questions of fact determined by the jury, without any intimation or unfair comment by the trial judge."

The record has been carefully examined, and we fail to find any statement or expression, intimation, or unfair comment made by the trial judge in this case. It is true, in a contest between opposing counsel in ruling upon some of the objections interposed, the trial judge made some statements that were rather emphatic. It was not necessary for the court to make them, yet there is nothing in the statements that tend in any way whatever to show bias or prejudice by the court, or anything that would indicate how the court felt with reference to the guilt or innocence of the defendant.

It is next urged by the defendant that the county attorney in analyzing the statement in substance stated:

"Now I will show you the premeditated design. Heenan had the gun on him you see. Arthur Heenan can't tell you anything about it because he is dead, and Mrs. Morris, they brought her here and there was nobody else there, and she said that this defendant—look. He didn't get his hands up here, but this defendant got his hands up here. Did you notice that? Uncontradicted, and there were only three people there, and Mrs. Morris told you about it, and testified about it, and Arthur Heenan is dead. So, he got his hands up here, you see. Premeditated design."

The defendant argues that the county attorney had no other purpose in his argument than to call the attention of the jury to the fact that the defendant had failed to take the stand and testify; citing in support of his contention Rader v. State, 12 Okla. Cr. 354, 157 Pac. 270, and many other cases. Defendant charges that the statement of the county attorney was made for the purpose of indirectly referring to the fact that the defendant had not taken the witness stand and testified in his own behalf, and urging it was an attempt upon the part of the county attorney to do indirectly what he could not do

directly. In Murrell v. State, 34 Okla. Cr. 413, 246 Pac. 644, 645, in referring to the statute prohibiting the county attorney from referring to the fact that the defendant did not testify in his own behalf, the court said:

"This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to. controvert the state's showing by proof other than that which might be given by the defendant personally." Citing section 2698, C. O. S. 1921, now section 3068, O. S. 1931 (22 Okla. St. Ann. § 701).

The remark of the county attorney in his argument to the jury complained of by the defendant, under the facts as disclosed by the record, held, not a comment upon the failure of the defendant to testify within the meaning of the statute. Johns v. State, 55 Okla. Cr. 100, 101, 25 Pac. (2d) 716; Murrell v. State, 34 Okla. Cr. 413, 246 Pac. 644; McDaniel v. State, 35 Okla. Cr. 425, 250 Pac. 804.

Counsel for the state in propounding questions and in his argument became very dramatic at times and attempted to appeal to the sympathy of the jurors, yet we hold that the effort of the county attorney, in view of the testimony in the record, was not such a violation of the duty of the county attorney as to require a reversal of this case.

In White v. State, 34 Okla. Cr. 424, 246 Pac. 1114, this court in the second paragraph of the syllabus said:

"A judgment of conviction will not be reversed on the ground of improper admission or exclusion of evidence, unless after an examination of the entire record it appears that there has probably been a miscarriage of justice or a substantial violation of some constitutional or statutory right of the defendant."

In Rogers v. State, 9 Okla. Cr. 277, 131 Pac. 941, this court said:

"The admission or exclusion of testimony which, in the light of subsequent developments during the trial, indicates conclusively that no injury did or could have resulted is not ground for reversal of a judgment."

It is not deemed necessary to refer to each assignment presented by the defendant, for the reason that, after a careful examination of the assigned errors and the argument in support of the same, we do not think they possess sufficient merit to warrant a reversal. The testimony in this case conclusively shows that the defendant was discovered burglarizing the Morris home and when he ran from the house was pursued by the deceased and Mrs. Morris, and when arrested and partly searched by the deceased, the defendant without any justification or notice to the deceased fired the shot that took the life of Arthur Heenan.

There is nothing in the record to show that the defendant was justified in shooting the deceased, and no defense is made for the defendant except that he did not intend to take the life of the deceased, and that he probably in his nervousness pulled the trigger and shot the deceased. The record clearly shows that the defendant killed the deceased in order to prevent the deceased and Mrs. Morris taking him to the city officers where he could be placed in custody.

The crime for which the defendant was on trial arose out of the burglarizing of the Morris home, where the defendant was seen and fled from the home pursued by Mrs. Morris and the deceased, Arthur Heenan. This killing would not have occurred if the burglarizing of the Morris home had not been committed, as the defendant was pursued from the time he was discovered in the Morris home up to the time he was placed under arrest by the deceased. The defendant was a stranger in Oklahoma City, and, if

his own statement is to be considered, he had no object in view except to burglarize and rob. Not a single mitigating circumstance appears in the record. No one attempts to justify or can justify the acts of the defendant. The defendant did not hesitate to take the life of the deceased in order to prevent the deceased taking him to the police station and turning him over to the officers.

The killing of the deceased, as shown by the record, was a willful, cold-blooded murder, committed for the purpose of escaping from the burglary he had committed, at the time he was discovered and pursued by the deceased and Mrs. Morris.

It is not deemed necessary and would serve no useful purpose to prolong this opinion further. It is sufficient to say that the defendant was accorded a fair and impartial trial. There are many improper questions propounded by the prosecution contained in the record, but, after a careful consideration, we hold there are no reversible errors. The evidence is sufficient to sustain the charge of murder and the sentence imposed on the defendant of electrocution. The judgment is affirmed.

The original time for the execution having passed during the pending of this appeal, it is considered, ordered, and adjudged by the court that the judgment and sentence of the district court of Oklahoma county be carried out by the electrocution of the defendant, by the warden of the state penitentiary, at McAlester, Okla., on Friday, June 25, 1937.

DOYLE and BAREFOOT, JJ., concur.