[Crim. No. 3317. Fifth Dist. Nov. 21, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
ARCHIE FULLER et al., Defendants and Respondents.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel E. Carey and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Appellant.

John B. Smurr, under appointment by the Court of Appeal, Paul Halvonik, and Quin Denvir, State Public Defenders, Gary S. Goodpaster and Ezra Hendron, Chief Assistant State Public Defenders, Mark L. Christiansen and Richard G. Fathy, Deputy State Public Defenders, for Defendants and Respondents.

OPINION

**FRANSON, Acting P. J.—**

### INTRODUCTION

This appeal challenges the California felony-murder rule as it applies to an unintentionally caused death during a high speed automobile chase following the commission of a nonviolent, daylight burglary of an unattended motor vehicle. Solely by force of precedent we hold that the felony-murder rule applies and respondents can be prosecuted for first degree murder.

### STATEMENT OF THE CASE AND FACTS

Respondents were charged by information with murder (Pen. Code, § 187) and several counts of burglary. In response to a Penal Code section 995 motion to set aside the information, the trial court dismissed the murder charge and amended the information to substitute a vehicular manslaughter charge under Penal Code section 192, subdivision 3, paragraph (a). The People have appealed.

The pertinent facts are as follows: On Sunday, February 20, 1977, at about 8:30 a.m., uniformed Cadet Police Officer Guy Ballesteroz was on routine patrol in his vehicle, proceeding southbound on Blackstone Avenue in the City of Fresno. As the officer approached the Fresno Dodge car lot, he saw an older model Plymouth parked in front of the lot. He also saw respondents rolling two tires apiece toward the Plymouth.

His suspicions aroused, the officer radioed the dispatcher and requested that a police unit be sent.

Officer Ballesteroz kept the respondents under observation as he proceeded past the car lot and stopped at the next intersection. As he reached that point he saw the respondents stop rolling the tires and walk to the Plymouth on the street. Ballesteroz made a U-turn and headed northbound on Blackstone. The respondents got into the Plymouth and drove away "really fast." Thereafter, a high speed chase ensued which eventually resulted in respondents' car running a red light at the intersection of Blackstone and Barstow Avenues and striking another automobile which had entered the intersection. The driver of the other automobile was killed. Respondents were arrested at the scene. The chase from the car lot covered some 7 miles and lasted approximately 10 to 12 minutes. During the chase the respondents' car narrowly missed colliding with several other cars including two police vehicles that were positioned to block their escape.

Later investigation revealed that four locked Dodge vans at the car lot had been forcibly entered and the spare tires removed. Fingerprints from both of the respondents were found on the jack stands in some of the vans.

### Respondents May Be Prosecuted for First Degree Felony Murder

■ Penal Code section 189 provides, in pertinent part: "All murder . . . which is committed *in the perpetration of,* or attempt to perpetrate, arson, rape, robbery, *burglary,* mayhem, or [lewd acts with a minor], is murder of the first degree; . . ." (Italics added.) This statute imposes strict liability for deaths committed in the course of one of the enumerated felonies whether the killing was caused intentionally, negligently, or merely accidentally. (*People* v. *Cantrell* (1973) 8 Cal.3d 672, 688 [105 Cal.Rptr. 792, 504 P.2d 1256]; *People* v. *Coefield* (1951) 37 Cal.2d 865, 868 [236 P.2d 570].) Malice is imputed and need not be shown. (*People* v. *Burton* (1971) 6 Cal.3d 375, 384-385 [99 Cal.Rptr. 1, 491 P.2d 793]; *People* v. *Ireland* (1969) 70 Cal.2d 522, 538 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R. 3d 1323].) ■ The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally. (*People* v. *Washington* (1965) 62 Cal.2d 777, 781 [44 Cal.Rptr. 442, 402 P.2d 130]; see Holmes, The Common Law, pp. 56-57.)

■ Burglary falls expressly within the purview of California's first degree felony-murder rule. Any burglary within Penal Code section 459 is sufficient to invoke the rule. (*People* v. *Talbot* (1966) 64 Cal.2d 691, 705 [51 Cal.Rptr. 417, 414 P.2d 633]; *People* v. *Thomas* (1975) 44 Cal.App.3d 573, 575 [117 Cal.Rptr. 855]; *People* v. *Earl* (1973) 29 Cal.App.3d 894, 900 [105 Cal.Rptr. 831].) Whether or not the particular burglary was dangerous to human life is of no legal import. *(Earl, supra.)*

■ The meaning of murder committed "in the perpetration of" a felony within Penal Code section 189 also is clear. The Supreme Court has stated that this language does not require a strict causal relation between the felony and the killing; it is sufficient if both are "parts of one continuous transaction." (*People* v. *Welch* (1972) 8 Cal.3d 106, 118 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *Mason* (1960) 54 Cal.2d 164, 169 [4 Cal.Rptr. 841, 351 P.2d 1025].) ■ Flight following a felony is considered part of the same transaction as long as the felon has not reached a "place of temporary safety." (*People* v. *Salas* (1972) 7 Cal.3d 812, 822 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832]; *People* v. *Boss* (1930) 210 Cal. 245, 250 [290 P. 881].) Whether the defendant has reached such a place of safety is a question of fact for the jury. Respondents' reliance on *People* v. *Ford* (1966) 65 Cal.2d 41, 56 [52 Cal.Rptr. 228, 416 P.2d 132] for the proposition that this is a legal question is misplaced. In *Ford,* the court held that it was a question of law in that particular case because many hours had elapsed between the felony and the killing, and there was no evidence that the defendant was attempting to escape at the time of the killing.

■ Respondents argue that although California has applied the felony-murder rule to escaping robbers no case has applied the rule to escaping burglars. They cite dicta in *People* v. *Boss, supra,* 210 Cal. 245, 251, to support the distinction between those escaping from robberies: "Robbery, unlike burglary is not confined to a fixed *locus,* but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution to the plan as gaining possession of the property." (*Id.,* at p. 251.)

This distinction does not withstand analysis. A burglary predicated on theft can be committed with equal or greater violence than a robbery, and leaving the scene with the stolen property is equally important. Moreover, the *Boss* dicta has not been cited to support such a distinction in any other California case. Furthermore, other states do not draw a distinction

between burglary and robbery flight. To the contrary, the felony-murder rule has been applied to unintended deaths in the course of burglary flight. (See, e.g., *People* v. *Hickman* (1973) 12 Ill.App.3d 412 [297 N.E.2d 582]—flight by *armed defendants* who had burglarized warehouse in nighttime; *Gore* v. *Leeke* (1973) 261 S.C. 308 [199 S.E.2d 755]; *Commonwealth* v. *Carey* (1951) 368 Pa. 157 [82 A.2d 240]—*armed defendant* fled from residence he burglarized at night; *State* v. *Ryan* (1937) 192 Wash. 160 [73 P.2d 735]; *Lakes* v. *State* (1937) 61 Okla.Crim. 252 [67 P.2d 457];*State* v. *Adams* (1936) 339 Mo. 926 [98 S.W.2d 632, 108 A.L.R. 838]—defendants fleeing after burglarizing a filling station *in nighttime*; *Francis* v. *State* (1919) 104 Neb. 5 [175 N.W. 675]—*armed defendants* fleeing after burglarizing store buildings; *Conrad* v. *State* (1906) 75 Ohio St. 52 [78 N.E. 957]—fleeing defendants had burglarized *a home*; see generally Felony-Murder Rule—"Termination of Felony" (1974) 58 A.L.R.3d 851, 962-975.) Thus, the trial court erred in striking the murder count premised upon the felony-murder rule.

We deem it appropriate, however, to make a few observations concerning the irrationality of applying the felony-murder rule in the present case. In *People* v. *Washington, supra,* 62 Cal.2d 777, 783, a case limiting the rule's application to killings committed by the defendant or his accomplice, our Supreme Court stated: "The felony-murder rule has been criticized on the grounds that in almost all cases in which it is applied it is unnecessary and that it erodes the relation between criminal liability and moral culpability. [Citations.] Although it is the law in this state (Pen. Code, § 189), *it should not be extended beyond any rational function that it is designed to serve.*" (Italics added.) In *People* v. *Phillips* (1966) 64 Cal.2d 574 [51 Cal.Rptr. 225, 414 P.2d 353], the court elaborated: "We have thus recognized that the felony-murder doctrine expresses a highly artificial concept that deserves no extension beyond its required application. Indeed, the rule itself has been abandoned by the courts of England, where it had its inception. It has been subjected to severe and sweeping criticism." (*Id.,* at pp. 582-583, fns. omitted.) The *Phillips* court explained, "The felony-murder doctrine has been censured not only because it artificially imposes malice as to one crime because of defendant's commission of another but because it anachronistically resurrects from a bygone age a 'barbaric' concept that has been discarded in the place of its origin. . . ." (*Id.,* at p. 583, fn. 6.)

The Supreme Court has recently reaffirmed its dislike of the felony-murder rule in *People* v. *Henderson* (1977) 19 Cal.3d 86, 92-93 [137 Cal.Rptr. 1, 560 P.2d 1180]. The literature is replete with criticism of the

rule. See, for example, Perkins on Criminal Law (2d ed. 1969) page 44; Packer, *The Case for Revision of the Penal Code* (1961) 13 Stan.L.Rev. 252, 259.

In *People* v. *Satchell* (1971) 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383], our Supreme Court reversed a second degree felony-murder conviction arising out of a killing by an ex-felon in possession of a concealed weapon (a sawed-off shotgun) in violation of Penal Code section 12021. The court concluded that the felony must be viewed in *the abstract* and not on the basis of the particular facts of the case; that the carrying of a concealed weapon by an ex-felon is not a felony inherently dangerous to human life ". . . because we can conceive of such a vast number of situations wherein it would be grossly illogical to impute malice, . . ." (6 Cal.3d at p. 40.) The court accepted the defendant's argument that of the many activities that are punishable as felonies only some clearly manifest a propensity for dangerous acts by the perpetrator; hence, it cannot be said theoretically that a felon who is armed with a concealable weapon presents a danger significantly greater than a nonfelon similarly armed. The court, however, pointed out that independent of the felony-murder rule the prosecution was still free to prove any degree of murder or manslaughter that the evidence might substantiate. (*Id.,* at p. 33, fn. 11.)

*Satchell* also considered the propriety of a felony-murder instruction based upon a violation of Penal Code section 12020. This section provides that any person in possession of certain weapons, including a sawed-off shotgun, is guilty of a felony. The court concluded that this offense abstractly viewed also is not inherently dangerous to human life since it makes no distinction between the innocent gun collector and the hardened criminal. Again the court noted that if such possession was of an extremely reckless nature indicating a "conscious disregard for human life," malice could be imputed via ordinary murder principles. (6 Cal.3d at p. 42.)

In *People* v. *Lopez* (1971) 6 Cal.3d 45 [98 Cal.Rptr. 44, 489 P.2d 1372], the *Satchell* reasoning was used to reverse a second degree murder conviction based on the underlying felony of escape from a county jail. (Pen. Code, § 4532.) "We cannot conclude that those who commit nonviolent escapes such as those here suggested thereby perpetrate an offense which should logically serve as the basis for the imputation of malice aforethought in a murder prosecution. Because section 4532 draws no relevant distinction between such escapes and the more violent

variety, it proscribes an offense which, considered in the abstract, is not *inherently* dangerous to human life and cannot properly support a second degree felony-murder instruction." (Italics original.) (6 Cal.3d at pp. 51-52, fn. omitted.)

And in *People* v. *Morales* (1975) 49 Cal.App.3d 134 [122 Cal.Rptr. 157], it was held that grand theft from the person of another is not an inherently dangerous felony to support a felony-murder charge: "It is apparent that the offense can readily be perpetrated without any significant hazard to human life; . . . Only in the unusual case would a taking from the person involve a substantial danger of death without the thief using force against his victim. If the thief does use force, either to effect the taking or to resist the victim's efforts to retrieve the property [citation], the crime becomes robbery, and will support application of the felony-murder rule for that reason. Where the thief abstains from the use of force, he thereby removes the chief source of danger to human life; in such case the purpose of the felony-murder rule, 'to deter felons from killing negligently or accidentally' [citation], has already been achieved, and thus there would be no rational purpose to be served in extending the doctrine to cover the nonforceful larceny." (49 Cal.App.3d at p. 143.)

Finally, the grand theft of an automobile in violation of Vehicle Code section 10851 followed by a high speed chase resulting in an unintended death does not constitute the commission of a felony inherently dangerous to human life so as to support the felony-murder doctrine (*People* v. *Williams* (1965) 63 Cal.2d 452, 458, fn. 5 [47 Cal.Rptr. 7, 406 P.2d 647], disapproving *People* v. *Pulley* (1964) 225 Cal.App.2d 366 [37 Cal.Rptr. 376], on the ground that *Pulley* erroneously looked to the particular facts of the felony in determining its dangerous character).

Therefore, one may cogently ask: If possession of a concealed weapon by an ex-felon, escape from a county jail, and grand theft of an automobile are not felonies per se dangerous to human life so as to provide a basis for the felony-murder rule, how may the theft of personal property from an unattended vehicle without the use of weapons be deemed inherently dangerous? Furthermore, if such a burglary will not support a second degree felony murder, how can it rationally be used to support a first degree felony murder?

If we were writing on a clean slate, we would hold that respondents should not be prosecuted for felony murder since viewed in the abstract, an automobile burglary is not dangerous to human life. The present case

demonstrates why this is so. Respondents committed the burglary on vans parked in a dealer's lot on a Sunday morning. There were no people inside the vans or on the lot at the time. The respondents were not armed and presumably had no expectation of using violence during the burglary.

Furthermore, treating the flight as part of the burglary to bootstrap the entire transaction into one inherently dangerous to human life simply begs the issue; flight from the scene of any crime is inherently dangerous. So, if a merchant in pursuit of a fleeing shoplifter is killed accidentally (by falling and striking his head on the curb or being hit by a passing automobile), the thief would be guilty of first degree felony murder assuming *the requisite intent to steal at the time of the entry into the store.* (Cf. *People* v. *Earl, supra,* 29 Cal.App.3d 894.) Such a harsh result destroys the symmetry of the law by equating an accidental killing resulting from a petty theft with a premeditated murder. In no sense can it be said that such a result furthers the ostensible purpose of the felony-murder rule which is to deter those engaged in felonies from killing negligently or accidentally. (*People* v. *Washington, supra,* 62 Cal.2d 777, 781.) On the other hand, if the flight is divorced from the burglary the latter can be objectively evaluated as to its dangerous propensities, and the instant burglary would not be deemed dangerous to human life and would be outside the purview of the felony-murder rule.

As was pointed out in *People* v. *Earl, supra,* 29 Cal.App.3d 894, 898, when the felony-murder statute was enacted in 1872, Penal Code section 459 required that the burglary occur in the nighttime and involve the entry of a "house, room, apartment, or tenement, or any tent, vessel, water craft, or railroad car . . . ." As defined, burglary was per se a crime dangerous to human life based on the probability of human occupancy of the described enclosures. Such danger to life was a common element in all of the felonies specified in section 189 (i.e., arson, rape, robbery, mayhem, or lewd acts upon a child). Contrary to the holding in *People* v. *Talbot, supra,* 64 Cal.2d at page 705, it rationally can be argued that the Legislature did not intend to include an automobile burglary within the felony-murder rule. This conclusion is strongly supported by the legislative classification of burglary into degrees. Penal Code section 460 provides that every burglary of an inhabited dwelling house, trailer coach, or building committed in the nighttime, is burglary of the first degree. All other kinds of burglary are of the second degree. It would be reasonable to include only first degree burglary in the Penal Code section 189 definition of felony murder.

Nonetheless, as previously explained the force of precedent requires the application of the first degree felony-murder rule to the instant case.

## Respondents Also May Be Prosecuted for Second Degree Murder

■ For the guidance of the trial court, we observe that respondents may also be prosecuted for ordinary second degree murder. ■ Second degree murder is an unlawful killing with malice aforethought but not willful, premeditated or deliberate. (*People* v. *Jeter* (1964) 60 Cal.2d 671 [36 Cal.Rptr. 323, 388 P.2d 355]; *People* v. *Brust* (1957) 47 Cal.2d 776, 783 [306 P.2d 480].) Malice is implied when the circumstances attending the killing demonstrate "an abandoned and malignant heart." (Pen. Code, § 188.) This simply means that malice may be implied when the defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with wanton disregard for human life. (*People* v. *Washington, supra,* 62 Cal.2d 777, 782.)

In *People* v. *Pulley, supra,* 225 Cal.App.2d 366, the defendants stole an automobile and got involved in a 75- to 80-mile-per-hour chase with the police. They ran through a red light and caused a multi-car collision, killing one of the drivers. The court stated: "By any reasonable standard, stealing and driving a stolen car and endeavoring to escape pursuing officers with the stolen car, entering an intersection against all rules of the road at 70 to 80 miles per hour and crashing with other cars lawfully proceeding therein, are highly dangerous. Violence in evading the police is within the ambit of risk. Death here was not a freak coincidence, but an expectable incident of the felony, part of the risk that is set in motion by the original crime." (*Id.,* at p. 373.) The court upheld the application of the second degree felony-murder rule based upon the automobile theft.

The Supreme Court subsequently disapproved *Pulley* on the ground that the court erroneously looked to the particular facts of the case in determining whether it was "inherently dangerous" so as to support a second degree felony murder conviction. (*People* v. *Williams, supra,* 63 Cal.2d 452, 458, fn. 5.) However, the Supreme Court thereafter made clear that the *Pulley* fact pattern demonstrated sufficiently extreme and wanton recklessness to establish malice aforethought and second degree murder. (*People* v. *Satchell, supra,* 6 Cal.3d 28, 33-34, fn. 11; see also *People* v. *Phillips, supra,* 64 Cal.2d 574, 581; Note (1967) 55 Cal.L.Rev. 329, 340, fn. 58.)

Respondents contend that their conduct falls within a specific proscription of Penal Code section 192, subdivision 3, paragraph (a), vehicular manslaughter, the unlawful killing by a grossly negligent use of the automobile. They argue that where general and specific statutes both punish the same conduct, the specific must control. This argument is unavailing. The respondents' conduct was more than grossly negligent. The conduct clearly presents an issue of fact as to whether or not respondents exhibited a wanton and reckless disregard for human life. Respondents drove at high speeds through main thoroughfares of Fresno in an attempt to elude Officer Ballesteroz. At one point in the chase they drove on the wrong side of Herndon Avenue and caused oncoming cars to swerve off of the road to avoid a head-on collision. They then made a U-turn and sped back to Blackstone Avenue, ran a red light and caused other traffic to stop to avoid a collision. Respondents then drove down Blackstone at speeds estimated between 60 and 75 miles per hour and headed straight at two oncoming police vehicles which were attempting to block their flight. Respondents did not reduce their speed as they approached the officers' vehicles, and only a last minute maneuver by the officers avoided a possible fatal collision. At the next intersection respondents' vehicle which "hadn't slowed down very much" ran the red light and struck and killed the driver of the other car. Under these facts the foreseeability of serious injury or death was apparent to respondents. (Cf. *People* v. *Pulley, supra,* 225 Cal.App.2d at p. 373; see Witkin, Cal. Crimes (1978 Supp.) § 327, p. 327.) In light of the Supreme Court's language in *People* v. *Satchell, supra,* 6 Cal.3d 28, that a high speed flight from police in an automobile may support a second degree murder conviction, the respondents' argument must fail.

The judgment is reversed.

Hopper, J., concurred.

Ginsburg, J.,* concurred only in the reversal of the judgment of dismissal.

Respondents' petitions for a hearing by the Supreme Court were denied February 8, 1979. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petitions should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.