[No. D041856. Fourth Dist., Div. One. Apr. 14, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LIMA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 976.1, the opinion filed April 14, 2004, is ordered certified for publication with the exception of part I.

## COUNSEL

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steven T. Oetting and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NARES, J.**—This is the second appeal in this case, which arises from a residential robbery and subsequent high-speed chase involving defendant James Lima and his codefendant Hieu Huu Le, during which one of the police cars pursuing Lima and Le struck and killed an innocent motorist.

In November 1999, defendant Lima, along with codefendant Le, was convicted of first degree murder, conspiracy to commit residential robbery, residential robbery, and false imprisonment by menace. Lima and Le appealed, both contending that the jury was erroneously instructed on the felony-murder rule, as it did not apply to the facts of the case. Lima also separately contended that (1) there was insufficient evidence to support prosecution under the provocative act theory of murder; (2) the court improperly denied him the opportunity to conduct discovery and to introduce evidence that the pursuing police officer's conduct was the proximate cause of the innocent motorist's death; (3) the court erroneously instructed the jury on proximate cause; and (4) the court erred in denying his posttrial motion to represent himself. Le separately contended that (1) the provocative act theory did not apply to the facts of the case; and (2) the evidence was insufficient to establish that he aided and abetted the evasion of police.

In an unpublished decision filed in December 2001, we held that the felony-murder rule did not apply to the facts of this case and reversed Lima's and Le's murder convictions. (*People v. Lima* (Dec. 31, 2001, D035050). (*Lima I*).) However, we also rejected the defendants' remaining contentions and affirmed their convictions on all other counts. (*Ibid.*)

Lima and Le were retried on the murder charges and the jury again convicted Lima of first degree murder. The jury deadlocked on the murder charge against Le, and a mistrial was declared. Lima was thereafter sentenced to a term of 25 years to life for the murder conviction. That sentence was to run consecutive to the 20-year prison term for the convictions from the first trial that were upheld on appeal.

On this appeal, Lima asserts that (1) the provocative act doctrine is inapplicable to this case, as the death of the innocent motorist was the result of a negligent or reckless act, as opposed to a deliberate and intentional use of lethal force; and (2) the court improperly limited his right to cross-examine the officer who collided with the victim's car concerning the possible reckless or negligent nature of that officer's driving prior to the crash.

We first conclude that the law of the case doctrine precludes consideration of Lima's contention that the court improperly limited his right to cross-examination as to the reasonableness of the driving of the officer who collided with the victim while in pursuit of Lima, as we resolved the same issue against him in *Lima I*. We also conclude that the "provocative act" theory of murder was properly applied to the facts of this case. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *People's Case*

John Vo lived with his wife, My Ly Dang; his mother-in-law, Ho No; his two sons, aged seven and nine at the time; and his sister-in-law, Chi Ho. Vo formerly owned a computer business.

On February 19, 1999, Vo was out of the house, and No, Ho, and Vo's two sons were at home. Sometime after 2:00 p.m., No answered the door, and Lima was standing there, holding a pile of paper over a gun, which was pointed at her face. Lima forced his way into the house, twisting No's left arm behind her back. After entering the home, Lima put No on the ground near Vo's sons, who had been watching television, and bound her hands and feet with electrical wire. Le came into the room and asked No, "Where's the money?" No responded that she did not know. Lima told Vo's sons to remain seated and asked them about computer chips.

Le went upstairs and found Vo's sister-in-law, Ho, in an upstairs bedroom. He tied her hands together with a phone cord and left to ransack another bedroom. Ho was able to loosen the phone cord and used a cell phone to call 911.

Ho went downstairs, where she encountered Lima. Lima instructed Ho to sit down, began to touch her breasts, and attempted to take off her pants. Ho slid back and pleaded with Lima to stop, telling him she was only 17.[1] Le came downstairs and said "Go" in Vietnamese. The men left through the front door, saying they would come back in a minute. Lima and Le took $200 to $500 in cash as well as jewelry from the house.

In the meantime, San Diego Police Officer Daniel Burow, responding to the 911 call, arrived at Vo's home and saw a Ford Bronco with no license plates parked in front. Officer Burow could not see through the tinted windows of the Bronco and cautiously took cover behind a nearby tree while he waited for other officers to arrive. Less than a minute later, Lima and Le ran out of the house. Lima looked at Officer Burow's patrol car and then climbed quickly into the driver's seat of the Bronco. Le, who was carrying a bag, climbed into the passenger seat of the car.

Lima drove away. Officer Burow jumped into his police cruiser, turned on the lights and siren and followed the Bronco. Lima drove across some traffic pylons and made an illegal U-turn; as he did so, Le reached out of the passenger side window and threw a nine-millimeter pistol into some bushes. At about this time, Officer Michael Moller joined in the chase, following Officer Burow.

The Bronco was heading south as it approached an intersection with a four-way stop. Anticipating the Bronco's arrival, Officer Dewayne Glazewski had parked his patrol car, with lights flashing, across the northbound traffic lanes. However, the Bronco sped through the stop sign without stopping or slowing. Lima passed a truck that was stopped at a stop sign by driving into the oncoming traffic lane and made a "blind" turn at the intersection without stopping.

Lima then returned to the four-way intersection. He moved into the oncoming traffic lane to pass a waiting car, turned right in front of that car and continued to drive, at speeds of 50 to 60 miles per hour, through several red lights.

With the police still in pursuit, the Bronco became stuck in traffic at an intersection. After Officer Burow pulled up behind the Bronco, Lima drove up onto the sidewalk, passing cars on the right. As he did so, the Bronco struck a truck, knocking a side rearview mirror from it. Lima narrowly missed the

---

[1] The facts of this alleged sexual battery of Ho come from the transcript of the first trial as at the second trial only the murder charge was retried and these facts were irrelevant to that charge. Lima requested that the record be augmented to include the record from the first appeal and on June 20, 2003, we took judicial notice of the transcript in *Lima I*.

signal post and made a right turn into the intersection against the red light. There was significant cross traffic in the intersection, and cars had to swerve or abruptly apply their brakes to avoid hitting the Bronco.

Lima then drove through another red light without stopping or braking. A driver who had started to pull her car out into the street from a nearby driveway saw the Bronco run the red light and quickly put her car into reverse to avoid being hit. As Lima sped through the intersection, he almost collided with a small white pickup truck.

Following closely behind the Bronco, Officer Burow's patrol car broadsided another car that was crossing through the intersection. Officer Burow quickly got out of his car, pulled the driver, June Meng, from her car and performed CPR on her for several minutes. However, Meng died as a result of the crash. Officer Burow was transported to the hospital. He suffered a whiplash injury and a contusion on his right elbow.

Officer Glazewski continued to pursue the Bronco, which sped through another stop sign and drove into a residential area, where Lima parked it. Lima and Le got out of the Bronco, and Officer Glazewski attempted to chase Le, but lost sight of him. After a search involving a police dog, officers found Le hiding in a juniper bush. Officers recovered cash from Le and found a bag with jewelry and money in the Bronco.

Meanwhile, motorist Casey Stoute, who earlier had seen the Bronco being chased, pulled over to see what was happening. Lima came toward him from some bushes in which he had been hiding. Stoute called 911 and pretended to be talking to his girlfriend as Lima approached him. Lima entered Stoute's car, asking for a ride. Stoute insisted that Lima pat himself down and then agreed to give Lima a ride. Stoute drove around, continuing to talk to the 911 operator, while pretending that he was talking to his girlfriend. They stopped for gas at one point and Lima gave Stoute $10 for gas. They continued driving until police stopped the car and arrested Lima. As police approached the car, Lima threw a gold bracelet towards Stoute.

## B. *Defense Case*

A collision reconstruction expert testified that Officer Burow struck the victim's car at about a 90-degree angle and was traveling approximately 53 miles per hour at the time. The victim was traveling about 20 miles per hour. Neither vehicle left any skid marks at the collision site. Officer Burow was 500 to 600 feet from the intersection when the light in his direction turned red. Several motorists estimated that the speed of the cars involved in the pursuit ranged anywhere from 45 to 80 miles per hour. Estimates of the

distance between Lima's Bronco and the pursuing officers also varied considerably, from as little as one or two seconds to 30 seconds.

Le testified that it was his idea to rob Vo's home. He believed that Vo had valuable computer chips in the house. Le threw the gun out of the Bronco during the chase. He was aware that the police were chasing them and asked Lima to stop several times.

## DISCUSSION

### I. *Law of the Case Doctrine**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *The Provocative Act Doctrine Applies to Lima's Actions*

Lima asserts that the court erred in allowing the People to try his murder charge under the provocative act doctrine because it is only applicable to cases in which the act causing the death is "a conscious and deliberate use of lethal force with lethal intent." (Fn. omitted.) This contention is unavailing.

As we stated in *Lima I,* when a defendant or his accomplice commits a provocative act and his victim or a police officer kills a third party in reasonable response to that act, the defendant is guilty of murder even though he did not act with malice aforethought. (*People v. Gilbert* (1965) 63 Cal.2d 690, 704–705 [47 Cal.Rptr. 909, 408 P.2d 365], judgment vacated on other grounds in *Gilbert v. California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].) A provocative act is one that is deliberately performed by the defendant or his accomplice with conscious disregard for human life and that has natural consequences dangerous to human life. (CALJIC No. 8.12.) Any act that is " 'fraught with grave and inherent danger to human life' " is sufficient to establish that the defendant acted with conscious disregard for human life. (*Taylor v. Superior Court* (1970) 3 Cal.3d 578, 584 [91 Cal.Rptr. 275, 477 P.2d 131], overruled on other grounds in *People v. Antick* (1975) 15 Cal.3d 79, 92, fn. 12 [123 Cal.Rptr. 475, 539 P.2d 43].)

Attempting to escape the scene of a robbery by initiating a high-speed and reckless chase, where the defendant ran red lights and stop signs, collided with one vehicle and almost collided with several others, constitutes " 'highly dangerous' " conduct. (*People v. Fuller* (1978) 86 Cal.App.3d 618, 628 [150 Cal.Rptr. 515] [second degree murder conviction resulting from car chase].) That conduct is sufficient to support a finding that a defendant has acted with

---

*See footnote, *ante,* page 259.

conscious disregard for human life. (*People v. Satchell* (1971) 6 Cal.3d 28, 33–34, fn. 11 [98 Cal.Rptr. 33, 489 P.2d 1361], overruled on other grounds in *People v. Flood* (1998) 18 Cal.4th 470, 490, fn. 12 [76 Cal.Rptr.2d 180, 957 P.2d 869] [high-speed chase sufficient to permit jury to find implied malice for purposes of establishing second degree murder].)

Lima asserts, however, that the provocative act doctrine is inapplicable here because it was intended to apply only to "deaths by gunfire at the hands of persons other than the felons." In support of this contention Lima points out that all Supreme Court cases applying the doctrine have involved shootings.

■ However, while Lima is correct that historically the provocative act doctrine has been most often applied to gun battles, that fact does not make it inapplicable to this case. No case has ever limited the doctrine to gun battles. Rather, it applies to *any conduct* that is " 'fraught with grave and inherent danger to human life' " so as to show a conscious disregard for human life. (CALJIC No. 8.12; *Taylor v. Superior Court, supra,* 3 Cal.3d at p. 584.)

Cases applying the implied malice element necessary to convict a defendant of second degree murder also demonstrate that engaging in a reckless, dangerous car chase falls within the provocative act doctrine. The showing of malice necessary to prove both second degree murder and provocative act murder is implied malice. (*People v. Cervantes* (2001) 26 Cal.4th 860, 868 [111 Cal.Rptr.2d 148, 29 P.3d 225]; *People v. White* (1995) 35 Cal.App.4th 758, 768 [41 Cal.Rptr.2d 510]; *People v. Superior Court (Shamis)* (1997) 58 Cal.App.4th 833, 844 [68 Cal.Rptr.2d 388].) " '[M]alice may be implied [if the] defendant [commits] an act with a high probability that it will result in death and does it with a base antisocial motive and a wanton disregard for human life.' " (*Shamis, supra,* 58 Cal.App.4th at p. 844; *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 134 [145 Cal.Rptr. 524, 577 P.2d 659].)

In the context of second degree murder prosecutions, an attempt to evade police using a high-speed vehicle chase has been held sufficient to demonstrate implied malice through a conscious disregard for the safety of others. For example, in *People v. Fuller, supra,* 86 Cal.App.3d 618, the Court of Appeal found a similar high-speed chase where the defendant ran a red light and killed an innocent driver sufficient to demonstrate the implied malice necessary for second degree murder: "Respondents drove at high speeds through main thoroughfares of Fresno in an attempt to elude Officer Ballesteroz. At one point in the chase they drove on the wrong side of Herndon Avenue and caused oncoming cars to swerve off of the road to avoid a head-on collision. They then made a U-turn and sped back to Blackstone

Avenue, ran a red light and caused other traffic to stop to avoid a collision. Respondents then drove down Blackstone at speeds estimated between 60 and 75 miles per hour and headed straight at two oncoming police vehicles which were attempting to block their flight. Respondents did not reduce their speed as they approached the officers' vehicles, and only a last minute maneuver by the officers avoided a possible fatal collision. At the next intersection respondents' vehicle which 'hadn't slowed down very much' ran the red light and struck and killed the driver of the other car. Under these facts the foreseeability of serious injury or death was apparent to respondents." (*Id.* at p. 629.)

As in *Fuller*, the facts in this case demonstrate that Lima fled police at high speeds and in a reckless manner, showing a conscious disregard for the obvious danger to human life. Lima's conduct satisfies both the implied malice necessary for second degree murder and the elements of provocative act murder: an intentional act that is likely to cause death, committed with a conscious disregard for life. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 104 [13 Cal.Rptr.2d 864, 840 P.2d 969].)

Lima cites *People v. Caldwell* (1984) 36 Cal.3d 210 [203 Cal.Rptr. 433, 681 P.2d 274] as supporting his position that provocative act murder is not applicable to high-speed vehicle chases. In that case, three robbers fled a restaurant robbery in a car, with officers in pursuit. (*Id.* at pp. 214–215.) At the end of the pursuit, one robber fired at police as the police rammed the suspects' car. (*Id.* at p. 215.) Another robber then pointed a gun out of his window, ignoring demands that he drop the weapon. (*Ibid.*) At the same time a third robber, the driver of the vehicle, got out of the car with a handgun. (*Ibid.*) The police then opened fire and killed the second robber. (*Id.* at pp. 215–216.)

The California Supreme Court affirmed the murder convictions of the first and third robbers. In doing so, it found that the driver exiting the car with a gun was sufficient for a finding of provocative act murder. (*People v. Caldwell, supra,* 36 Cal.3d at p. 218.) The high court then stated, however, that it might be difficult to show a causal connection between the third robber's driving and the ensuing gun battle. (*Id.* at p. 219.) Nevertheless, the court went on to hold that the reckless driving *could* have been the provocative act supporting the murder convictions. (*Id.* at pp. 219–220.) Thus, the *Caldwell* case actually supports the People's position, not Lima's. The high court's concern there was the issue of proximate cause because the shooting occurred after the vehicle had stopped, not whether a high-speed chase is the type of action that could be considered a provocative act. (*Ibid.*) The court ultimately concluded that the police chase *could* provide the factual support for provocative act murder. (*Ibid.*)

■ Lima also cites *People v. Cervantes, supra,* 26 Cal.4th 860 to support his position, pointing to the following language from that case: "The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*Id.* at p. 867.) Lima asserts that this language shows that provocative act murder is only intended to apply to gun battles. However, as discussed above, while provocative act murder has traditionally involved cases where the defendant instigates a gun battle, it is not by definition limited to such factual situations. Neither its elements nor any case law interpreting this doctrine support such a limitation. Since Lima's attempt to escape the scene of a robbery by engaging in a high-speed, dangerous chase was an intentional act committed with a conscious disregard for life, the provocative act doctrine applies.

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 28, 2004. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.