Filed 2/25/26  P. v. Shryack CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084802 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD302275) |
| AARON LEEN SHRYACK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted Aaron Leen Shryack of carjacking and evading a police officer with reckless driving.  On appeal, Shryack argues the trial court improperly denied his motion for mental health diversion.  Shryack further contends insufficient evidence supported the jury's true finding on the deadly weapon use enhancement attached to the carjacking count.  Finally, Shryack challenges his sentence, claiming the trial court erred by imposing a consecutive term for the evading count and by refusing to dismiss his prior strike conviction.  Finding no error, we affirm.

# II. BACKGROUND

In February 2024, construction superintendent Tucker Hansen was working at a jobsite.  He sat inside his truck due to heavy rain outside.  Shryack opened the passenger door of Hansen's vehicle and said " '[l]et's go for a ride' " in a serious tone.  Shryack smelled like alcohol, but he acted neither belligerent nor incoherent.  Hansen declined, Shryack asserted he needed to pick his son up from school, and Hansen asked Shryack to leave.

While looking at Hansen with a serious expression, Shryack lifted his shirt and grasped the handle of what Hansen believed was a gun holstered at Shryack's waist.  In response, Hansen feared for his life and told Shryack he could have whatever he wanted.  Shryack demanded that Hansen exit the vehicle.  Hansen complied and hid behind a tractor, while Shryack got in the driver's seat of Hansen's truck and quickly drove away.

Hansen called the police, who found Shryack driving Hansen's truck later that afternoon in a busy, high trafficked commercial area.  In an effort to stop Shryack, San Diego Police Officer Charlotte Hess activated her patrol car's overhead lights and sirens.  Shryack entered a parking lot and then

rapidly accelerated over a grassy embankment, driving over a sidewalk and back onto the street around a blind corner.

Officer Hess continued pursuing Shryack as he dodged traffic and abruptly changed lanes in the rain at approximately 80 miles per hour in a 35-mile-per-hour zone. After a few minutes, Officer Hess deactivated her lights and siren and followed Shryack from a distance because Shryack's speed and the wet roads made the pursuit too dangerous.

Shryack proceeded to the freeway where he continued driving erratically, frequently changing lanes and occasionally driving on the shoulder to pass other drivers. Shryack eventually pulled over after about 40 minutes. Officers arrested Shryack, finding a large hunting knife sheathed in a holster attached to Shryack's waist.

The San Diego District Attorney's Office charged Shryack with carjacking (Pen. Code,[1] § 215, subd. (a); count 1) and evading a police officer with reckless driving (Veh. Code, § 2800.2, subd. (a); count 2). Prosecutors alleged that Shryack personally used a dangerous weapon in the commission of the carjacking (§ 12022, subd. (b)(2)).

Prior to trial, Shryack moved for mental health diversion pursuant to section 1001.36. Shryack supported his motion with a report from psychologist Valeria A. Rice, who diagnosed Shryack with unspecified depressive disorder, unspecified trauma and stressor related disorder, and stimulant and opiate use disorders. Dr. Rice determined that Shryack was "amenable to participating in either an outpatient or residential dual diagnosis program," and "an excellent candidate for mental health diversion."

---

[1]  All further undesignated statutory references are to the Penal Code.

3

The People opposed the motion on various grounds, including that Shryack posed a risk to public safety if treated in the community. The People cited Shryack's criminal history, which includes three domestic violence convictions and violations of probation and a restraining order. Shryack also had a prior robbery and evading a police officer with reckless driving convictions from 2018, in which he stole merchandise from a Walmart by threatening a loss prevention officer with a knife. After leaving the Walmart, Shryack drove at excessive speeds on the freeway and residential streets to avoid pursing police cars. Shryack failed to stop at traffic signals and intentionally crashed into several fences before being apprehended.

The People argued that Shryack's criminal history showed that he was violent, emphasizing that Shryack's reckless evasion of police officers could lead to second degree murder. Shryack's counsel claimed Shryack did not pose a disqualifying level of danger under section 1001.36 because he was unlikely to commit a super strike.

At a hearing on June 25, 2024, the trial court denied the motion. Acknowledging that Shryack was eligible for mental health diversion, the trial court found him unsuitable because "[t]here does appear to be a pattern of behavior that involves a use of weapon and/or danger to the public and himself." The trial court also noted that Shryack's pattern of behavior was associated with the symptoms of his substance use disorder and shows a need that treatment through a diversion program cannot meet.

The matter proceeded to trial, and a jury convicted Shryack of both counts, finding that he personally used a deadly weapon in the commission of the carjacking. Shryack admitted the 2018 robbery conviction, which constituted both a serious felony (§ 667, subd. (a)) and a strike prior (§ 667, subds. (b)–(i)).

4

Shryack filed a *Romero*[2] motion requesting that the court dismiss his prior strike conviction for the 2018 robbery.  In ruling on the motion, the trial court partially relied on the probation officer's report, which indicated that in the 10 years leading up to Shryack's 2018 robbery, Shryack was convicted of three domestic violence offenses, providing alcohol to a minor, violating a restraining order, and possession of a controlled substance.  During that time, Shryack repeatedly violated the terms of his probation and failed to complete a diversion program.  Shryack then committed the 2018 robbery and evasion, followed by possession of a controlled substance less than a month later, an additional probation violation for failure to report, and then the current offenses in 2024.

The trial court denied the motion, determining that Shryack committed "a continuous course of criminal conduct" from 2008 through the 2018 robbery, a subsequent narcotics offense, and then the current offenses in 2024.  The trial court also found that the current offenses were not only similar to the prior robbery and evasion, but also increasingly serious and therefore concerning regarding public safety.  Further, the trial court noted that mental illness did not substantially contribute to the current offenses.  However, the trial court struck Shryack's prior serious felony.

The trial court sentenced Shryack to prison for 13 years 4 months.  Shryack received the midterm of five years for the carjacking, doubled to 10 due to his prior strike; a consecutive two-year midterm for the deadly weapon use; and a consecutive one year and four months for the evasion, representing one third of the doubled midterm.  Shryack's timely appeal followed.

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

III DISCUSSION

A.    *The Trial Court Did Not Abuse Its Discretion in Denying Shryack's Motion for Mental Health Diversion*

Shryack argues the trial court erred in denying his request for mental health diversion because it misapplied the statutory criteria for public safety. Shryack claims the trial court did not expressly find that he was likely to commit a super strike in the future and there was no basis to make such a finding.  We disagree.

1.    Mental Health Diversion

"[M]ental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program. . . . Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged.  [Citation.]  They are suitable if:  (1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety.' " (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).)

"Section 1001.36's definition of 'unreasonable risk of danger to public safety' is supplied by reference to section 1170.18.  [Citation.]  Section 1170.18, in turn, defines 'unreasonable risk of danger to public safety' as 'an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.'  [Citation.]  The violent felonies encompassed

6

in this definition 'are known as "super strikes" and include murder.' " (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.)

"[E]ven where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny diversion. [Citations.] But this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' " (*Sarmiento, supra,* 98 Cal.App.5th at p. 892.) Accordingly, a trial court cannot "reject a request for diversion based on an alternative meaning of 'public safety' inconsistent with the specific statutory definition in section 1001.36, subdivision (c)(4)." (*Id.*, at p. 896.)

2.    Standard of Review

"A trial court's ruling on a request for mental health diversion is reviewed for abuse of discretion, and the court's factual findings are reviewed for substantial evidence. [Citation.] '[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 401.) On the other hand, " '[a] court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid*.)

Under the substantial evidence standard, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact" ' " could make the challenged finding. (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) We do " ' "not reweigh the evidence, evaluate the

7

credibility of witnesses, or resolve evidentiary conflicts." ' " (*People v. Helzer* (2024) 15 Cal.5th 622, 646.)

3. Analysis

We agree with Shryack that the trial court did not expressly find that Shryack was likely to commit a super strike. However, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361.)

Shryack's motion and the People's opposition cited the correct statutory definitions of "unreasonable risk of danger to public safety." This definition was reiterated at the hearing on the motion, where Shryack's counsel argued Shryack did not pose a risk of committing a super strike, and the People argued to the contrary focusing on the risk of second degree murder from Shryack's reckless evasion of police.

Additionally, the trial court specifically referenced suitability and danger to the public. We therefore agree with Shryack that "in making [a] finding that appellant presented a danger to himself and the public, [the trial court] was, in fact, addressing the fourth requirement for suitability, e.g. a finding the defendant 'will not pose an unreasonable risk of danger to public safety . . . if treated in the community.' " Although the trial court stated it was "exercising its discretion," the suitability determination is a matter of discretion. (§ 1001.36, subd. (a) ["the court may, in its discretion, . . . grant pretrial diversion to a defendant pursuant to this section if . . . the court determines that the defendant is suitable"].) The trial court's reference to its discretion therefore does not affirmatively show that the trial court relied on its residual discretion when addressing public danger. Indeed, at the time of the hearing, case law already prohibited courts from using their residual

discretion to modify the statutory definition of "unreasonable risk of danger to public safety." (*Sarmiento, supra,* 98 Cal.App.5th at pp. 896–897.)

On this record, we must presume the trial court knew and applied the correct statutory criteria regarding danger to public safety. Thus, the trial court impliedly found Shryack was likely to commit a super strike, and we assess whether that implied finding was adequately supported or was an abuse of discretion.

In addition to Shryack's three domestic violence convictions and knife use in the prior Walmart robbery and the current offense, Shryack has demonstrated a reckless disregard for the safety of others while attempting to avoid arrest. After the Walmart robbery, Shryack drove at excessive speeds on the freeway and residential streets to avoid pursing police cars, failing to stop at traffic signals and intentionally crashing into several fences. In the current case, Shryack fled from the police in the rain at approximately 80 miles per hour in a 35-mile-per-hour business district, dodging traffic and driving over an embankment and a sidewalk. Shryack then continued his erratic driving on the freeway for approximately 40 minutes, frequently changing lanes and occasionally driving on the shoulder to pass other vehicles.

Driving in such manner is likely to lead to a fatal collision, in which case Shryack could be convicted of second degree murder. (See, e.g., *People v. Lima* (2004) 118 Cal.App.4th 259, 267 [defendant "fled police at high speeds and in a reckless manner, showing a conscious disregard for the obvious danger to human life . . . satisfy[ying] . . . the implied malice necessary for second degree murder"]; *People v. Moore* (2010) 187 Cal.App.4th 937, 941 [second degree murder conviction upheld where defendant "drove 70 miles per hour in a 35-mile-per-hour zone, crossed into the opposing traffic lane,

9

caused oncoming drivers to avoid him, ran a red light and struck a car in the intersection"].)  Second degree murder is a super strike.  (§ 667, subd. (e)(2)(C)(iv)(IV).)

Consequently, Shryack's habit of evading police in a manner that could lead to second degree murder reasonably supports the trial court's implied finding that Shryack posed an "unreasonable risk of danger to public safety" pursuant to section 1001.36, subdivision (c)(4).  Shryack has therefore failed to show that the trial court abused its discretion in denying his motion for mental health diversion.

B.    *Sufficient Evidence Supports the Jury's Finding That Shryack Used a Deadly or Dangerous Weapon in the Carjacking*

Shryack argues that his knife was sheathed during the entire carjacking.  He therefore contends that he was merely armed, and the jury's personal weapon use finding was not supported by sufficient evidence.  We find sufficient evidence of weapon use.

The enhancement under section 12022, subdivision (b) applies when a defendant "personally uses a deadly or dangerous weapon in the commission of a felony."  (§ 12022, subd. (b)(1).)  In distinguishing between arming and use, we ask:  " 'Did the defendant take some *action* with the [weapon] *in furtherance of the commission* of the crime?  If so, the weapon was "used" . . . . If, on the other hand, the defendant engaged in no weapons-related conduct, or such conduct was incidental and unrelated to the offense, no "use" occurred,' " and the defendant was merely armed.  (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1003.)  We review an insufficient evidence claim under the substantial evidence standard.  (*People v. Holmes, McClain and Newborn, supra,* 12 Cal.5th at p. 780.)

10

Here, Hansen testified that he initially declined Shryack's requests for a ride and asked Shryack to leave. In response, Shryack lifted his shirt and grasped the handle of a knife holstered at his waist. Believing Shryack had a gun, Hansen surrendered to Shryack's demands, allowing Shryack to take Hansen's truck. Hansen told the jury that if Shryack had not lifted his shirt and reached for a weapon, Hansen would not have given Shryack his truck.

From this evidence, the jury could reasonably infer that Shryack displayed his knife to intimidate Hansen and accomplish the carjacking. Accordingly, there was sufficient evidence that Shryack used the knife in furtherance of commission of the crime, and the jury's true finding under section 12022, subdivision (b) is adequately supported.

## C. *The Trial Court Did Not Err in Imposing a Consecutive Sentence for Count 2*

Shryack argues that pursuant to section 654, trial court should not have imposed a consecutive sentence for count 2, evading an officer. He claims the carjacking and evasion were an indivisible course of conduct, and his sole intent in both offenses was to flee from police. We find no error.

Section 654 states in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.' " (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1005.) " 'If . . . defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even

11

though the violations shared common acts or were parts of an otherwise indivisible course of conduct." ' " (*Ibid*.) We review a ruling under section 654 for substantial evidence. (*Ibid*.)

Here, there was no indication that Shryack was fleeing from police when he carjacked Hansen. Instead, law enforcement did not arrive on the scene or pursue Shryack until after Hansen reported his truck stolen. Accordingly, the trial court could have reasonably concluded the objective of the carjacking was to obtain Hansen's truck, while the objective of evading the police was to avoid being caught. We therefore see no error under section 654.

D.    *The Trial Court Did Not Abuse Its Discretion in Denying Shryack's Motion to Strike His Prior Conviction*

Shryack argues the trial court abused its discretion in refusing to dismiss his prior strike conviction for the 2018 Walmart robbery. Shryack asserts that prior conviction was remote and did not involve actual violence. He further contends none of his prior offenses resulted in prison commitment, his mental health and substances abuse appear to be the underlying factors in his criminal behavior, and he would still face a considerable prison sentence if his prior strike was dismissed. We see no abuse of discretion.

The "Three Strikes" law restricts a court's discretion in sentencing repeat offenders. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) It " 'establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made." ' " (*Ibid*.) In making that determination, " 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background,

12

character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Ibid.*)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 374.) The circumstances justifying departure from the Three Strikes law must be extraordinary, and an abuse of discretion in this regard is even more extraordinary. (*People v. Vargas* (2014) 59 Cal.4th 635, 641.)

Here, the trial court correctly noted that Shryack continuously violated the law in the 10 years leading up to his 2018 robbery. That criminal behavior escalated with Shryack's 2018 robbery and evading convictions, which were dangerous to the public despite the absence of any physical injuries. Shryack was convicted of possession of a controlled substance less than a month later. He then committed the current offenses in 2024, which were similar to, yet more serious than, his 2018 crimes.

"Rather than simply calculating the number of years that have passed since the prior strikes, sentencing courts are to consider whether the defendant's prior strike convictions served 'as a pivot point for reforming his ways.' " (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.) Although Shryack's 2018 robbery was six years old, it was an intermediate step in his continually escalating criminal behavior. And even though Shryack did not previously serve any prison time, Shryack repeatedly violated the terms of his probation. The trial court therefore had a reasonable basis to conclude that the 2018 robbery did not result in Shryack reforming his behaviors, making him a repeat offender within the spirit of the Three Strikes law. We

13

also note that mitigation in Shryack's favor was accounted for when the trial court struck the serious felony prior.

Under these circumstances, Shryack has failed to show that no reasonable person could agree with the trial court's decision. We therefore see no abuse of discretion in the trial court's refusal to dismiss Shryack's prior strike.

## IV. DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.

14